# United States District Court
# Southern District of New York

| | |
|---|---|
| TRADECOMET.COM LLC, | ) |
| Plaintiff, | ) |
| | ) Docket No.: 09-CV-1400 (SHS) |
| v. | ) |
| GOOGLE INC., | ) |
| Defendant. | ) |

**DEFENDANT GOOGLE'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS BASED ON
<u>LACK OF SUBJECT MATTER JURISDICTION AND IMPROPER VENUE</u>**

WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION

Jonathan M. Jacobson
Susan A. Creighton
Chul Pak
Sara Ciarelli Walsh
1301 Avenue of the Americas
40th Floor
New York, New York 10019
(212) 999-5800 (Telephone)
(212) 999-5899 (Telecopier)

*Attorneys for Defendant, Google Inc.*

March 31, 2009

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| STATEMENT OF THE CASE | | 1 |
| A. | The Parties | 1 |
| B. | Google's AdWords Program | 2 |
| C. | TradeComet's Complaint | 3 |
| D. | TradeComet's Assent to Google's Forum Selection Clause | 3 |
| ARGUMENT | | 5 |
| I. | Google's Forum Selection Clause Has Been Enforced By This Court | 6 |
| II. | The Forum Selection Clause was Reasonably Communicated To TradeComet | 6 |
| III. | The Forum Selection Clause Is Mandatory | 7 |
| IV. | The Claims In This Suit are Subject to the Forum Selection Clause | 8 |
| V. | Enforcement of the Forum Selection Clause is not Unfair, Unreasonable, Unjust, or Invalid for Fraud or Overreaching | 11 |
| CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

## CASES

*Abbot Laboratories v. Takeda Pharm. Co.*,
  476 F.3d 421 (7th Cir. 2007) ...........................................................................................10

*Bense v. Interstate Battery Sys. of Am., Inc.*,
  683 F.2d 718 (2d Cir. 1982)............................................................................................8

*Boutari & Son, Wines and Spirits, S.A. v. Attiki Importers & Distributors, Inc.*,
  22 F.3d 51 (2d Cir. 1994) ...............................................................................................7

*CFirstClass Corp. v. Silverjet PLC*,
  560 F. Supp. 2d 324 (S.D.N.Y. 2008)..................................................................... *passim*

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991).................................................................................................11, 12

*Coregis Ins. Co. v. Am. Health Found., Inc.*,
  241 F.3d 123 (2d Cir. 2001)............................................................................................9

*D.H. Blair & Co. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006) .............................................................................................6

*Direct Mail Production Servs. Ltd. v. MBNA Corp.*,
  No. 99 Civ. 10550 (SHS), 2007 WL 1277597 (S.D.N.Y. Sept. 7, 2000) ......................8

*Effron v. Sun Line Cruises, Inc.*,
  67 F.3d 7 (2d Cir. 1995).............................................................................................6, 12

*Feldman v. Google Inc.*,
  513 F. Supp. 2d 229 (E.D. Pa. 2007) .........................................................................7, 11

*Kamen v. Am. Tel. & Tel. Co.*,
  791 F.2d 1006 (2d Cir. 1986)..........................................................................................4

*Klos v. Polskie Linie Lotnicze*,
  133 F.3d 164 (2d Cir. 1997)..........................................................................................11

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972)..........................................................................................................11

*New Moon Shipping Co. v. MAN B & W Diesel, AG*,
   121 F.3d 24 (2d Cir. 1997) ............................................................................................... 5, 11

*Novak v. Tucows, Inc.*,
   No. 06 Civ. 1909 (JFB) (ARL), 2007 WL 922306 (E.D.N.Y. Mar. 26, 2007) .............................. 6

*Olnick v. BMG Entm't*,
   138 Cal. App. 4th 1286, 42 Cal. Rptr. 3d 268 (Cal. Ct. App. 2006) ........................................ 8, 9

*Person v. Google Inc.*,
   456 F. Supp. 2d 488 (S.D.N.Y. 2006) ............................................................................... *passim*

*Phillips v. Audio Active Ltd.*,
   494 F. 3d 378 (2d Cir. 2007) ............................................................................................ *passim*

*Roby v. Corporation of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993) .................................................................................................. 8, 9

*Weingrad v. Telepathy, Inc.*,
   No. 05 Civ. 2024 (MBM), 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) ...................................... 6

*Wyeth & Brother* Ltd *v. CIGNA Int'l Corp.*,
   119 F.3d 1070 (3d Cir. 1997) .................................................................................................... 10

**STATUTES**

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 1, 4, 5, 12

Fed. R. Civ. P. 12(b)(3) ............................................................................................... 1, 4, 5, 12

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 1

Defendant Google Inc. ("Google") respectfully submits this memorandum of law in support of its motion to dismiss the complaint filed by Plaintiff TradeComet.com LLC ("TradeComet") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3).[1]

## PRELIMINARY STATEMENT

The Complaint in this case was filed in the wrong forum. Plaintiff's business relationship with Google is governed by terms and conditions dated August 22, 2006 ("Agreement") that require "all claims arising out of or relating to this Agreement or the Google program(s)" to be brought in Santa Clara County, California. Because Plaintiff has assented to this Agreement, the only proper forum for this suit is the United States District Court for the Northern District of California, San Jose Division. The Complaint should therefore be dismissed.

## STATEMENT OF THE CASE[2]

**A. THE PARTIES**

Plaintiff TradeComet is a Delaware limited liability company with its principal place of business in New York, New York. Complaint ("Cplt.") ¶ 11. TradeComet was founded in 2005 by Dan Savage, a "veteran of the publishing and online search industries," and graduate of Harvard College and Harvard Business School. *Id.* ¶ 37. TradeComet operates a website called SourceTool.com that, according to the Complaint, attracts "highly-valued search traffic of

---

[1] On March 17, 2009, the Court granted Google's request to file this motion, based on Fed. R. Civ. P. 12(b)(1) and 12(b)(3), separately from its anticipated motion to dismiss for failure to state a claim under Rule 12(b)(6). In omitting arguments based on Rule 12(b)(6) from this memorandum, Google in no way waives its right to submit a subsequent motion to dismiss for failure to state a claim.

[2] For the purpose of this motion, this statement of the facts conforms to the recitation in the Complaint. Plaintiff's allegations are, in many instances, misleading or inaccurate. By reciting them in this memorandum, Google does not adopt these facts as true.

businesses seeking to buy or sell products and service to other businesses," and provides what is commonly referred to as a "B2B" directory. *Id*. ¶ 4.

Google is a Delaware corporation headquartered in Mountain View, California. *Id*. ¶ 12. According to the Complaint, Google "operates a search website and a search advertising platform on the Internet." *Id.* ¶ 2.

**B.     GOOGLE'S ADWORDS PROGRAM**

Google's AdWords program is the core of Google's relationship with Plaintiff and the focus of this lawsuit. Through AdWords, Google auctions keywords to advertisers. *Id*. ¶ 32. Keywords are words or character strings that, when typed into a search engine, result in the appearance of advertised links alongside or above "natural" search results. *Id*. ¶¶ 2, 32. To have an ad associated with a keyword, an advertiser submits a bid based on the maximum price it would be willing to pay if its ad was displayed and "clicked" on by the user. *Id*. ¶ 33.

The per-click price that an advertiser bids is not necessarily what the advertiser pays if a user clicks on its ad. *Id.* One way that Google determines the per-click price is through an analysis of the quality of each advertiser's landing page. *Id.* According to the Complaint, this "Landing Page Quality" metric is part of the "Quality Score" that Google assigns to an ad based on the amount of money the keyword is expected to generate as well as the relevance of the ad to the keyword. *Id.* ¶ 94. The advertiser with the highest bid (but low Quality Score) does not always get the best position on the page, and in some cases, the ad is not shown. *Id.* ¶ 33. Thus, the Quality Score influences the price that an advertiser ultimately pays; and an advertiser of a site that has a low "Landing Page Quality" may have a minimum price threshold. *Id.* ¶¶ 33, 49. The Complaint alleges that Google began implementing its AdWords Landing Page Quality analysis in 2005. *Id.* ¶ 94.

### C. TRADECOMET'S COMPLAINT

According to the Complaint, "[i]n order to attract traffic to SourceTool, . . . TradeComet began purchasing several hundreds of thousands of keywords and phrases from Google's AdWords." Cplt. ¶ 43. By utilizing AdWords, the Complaint asserts, SourceTool became "remarkably successful" within three months of its launch. *Id. ¶* 44. As Google's quality analyses evolved, however, SourceTool's minimum bids for some of its keywords were increased as a result of its poor landing page quality. *Id.* ¶¶ 49, 96. The increase in minimum bid requirements for AdWords forms the basis of TradeComet's Complaint. *See, e.g.*, *id.* ¶¶ 47-48.

TradeComet's Complaint asserts three claims. The first and second are that Google has monopolized or attempted to monopolize the asserted "search advertising" market in violation of Section 2 of the Sherman Act. The theory is that, by making successful bids on AdWords for SourceTool more difficult as a result of the Quality Score adjustments, and by entering into various "exclusive" arrangements with "highly-trafficked websites," Google has acted to acquire or maintain monopoly power in a purported "search advertising market." *Id.* ¶¶ 93, 104-14. The third claim is asserted under Section 1 of the Sherman Act. It is based on allegations that Google has entered into an agreement with Business.com that provides it with "preferred treatment" in the minimum bids required for the partners' AdWords ads. *Id.* ¶¶ 100, 115-20.

### D. TRADECOMET'S ASSENT TO GOOGLE'S FORUM SELECTION CLAUSE

The terms and conditions that govern AdWords accounts are accessible to advertisers by a link in their online AdWords account interface. *See* Declaration of Heather Wilburn ("Wilburn

Dec."), dated March 31, 2009, ¶ 3, Ex. A.[3] ("These Terms govern Customer's participation in Google's advertising program(s)"). The current Agreement expressly supersedes and replaces all prior agreements. The Agreement states, in relevant part:

> ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE GOOGLE PROGRAM(S) SHALL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA, AND GOOGLE AND CUSTOMER CONSENT TO PERSONAL JURISDICTION IN THOSE COURTS. The Agreement constitutes the entire and exclusive agreement between the parties with respect to the subject matter hereof, and supersedes and replaces any other agreements, terms and conditions applicable to the subject matter hereof.

Wilburn Dec., Ex. A, ¶ 9. There is no doubt that Plaintiff assented to this Agreement, which was released in August of 2006. Plaintiff electronically accepted the Agreement on August 29, 2006 for ten of its AdWords accounts that were created prior to that point. *Id*. ¶¶ 5-6, Exs. B-K. On November 28, 2006, Plaintiff accepted the Agreement for the account that it created that same day.[4] *Id.* ¶¶ 5, 7, Ex. L.

Google brings this motion to dismiss because, as dictated by the current Agreement between Plaintiff and Google, this Complaint should have been filed in the United States District Court for the Northern District of California, San Jose Division, which is located in Santa Clara

---

[3] In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(3), a court may consider evidentiary matter outside the pleadings regarding the existence of jurisdiction. *CFirstclass v. Silverjet PLC*, 560 F. Supp. 324, 327 n.1 (S.D.N.Y. 2008) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)); *see also Person v. Google Inc.*, 456 F. Supp. 2d 488, 496-97 (S.D.N.Y. 2006) (considering terms of contract and evidence pertaining to assent in deciding motion under Fed. R. Civ. P. 12(b)(3)).

[4] The accounts referenced herein and in the Declaration of Heather Wilburn were identified in Plaintiff's First Request for Production of Documents. Google reserves its rights to challenge the relevance of any of these accounts. In the event that Plaintiff asserts that other AdWords accounts are relevant to this litigation, Google reserves the right to introduce evidence of consent to any governing terms and conditions.

County, California. Venue is therefore improper under Fed. R. Civ. P. 12(b)(3), and the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## ARGUMENT

TradeComet's Complaint should be dismissed because it was filed in the wrong court. A complaint may be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) or 12(b)(3) if venue is improper. *See CFirstClass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 327 (S.D.N.Y. 2008) (deciding motion to dismiss based on forum selection clause under Fed. R. Civ. P. 12(b)(1)); *Phillips v. Audio Active Ltd.*, 494 F. 3d 378, 382 (2d Cir. 2007) (affirming dismissal based on forum selection clause under Fed. R. Civ. P. 12(b)(3)); *New Moon Shipping Co. v. MAN B & W Diesel, AG*, 121 F.3d 24, 29 (2d Cir. 1997) (noting "no existing mechanism with which forum selection enforcement is a perfect fit.") (citation omitted). Based on the express and unequivocal terms of the Agreement into which Plaintiff entered, it is required to litigate any disputes stemming from the AdWords program in Santa Clara County, California.

In *Phillips*, the Second Circuit set forth a four-part analysis for deciding whether to dismiss a claim based on a forum selection clause: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive; (3) whether the claims and parties involved in the suits are subject to the forum selection clause; and (4) whether, assuming the clause was communicated, mandatory, and covers the claims in dispute, the presumption of enforceability is rebutted by a strong showing that enforcement would be unreasonable, unjust, or that the clause is invalid. *Phillips*, 494 F.3d at 383-84. As discussed below, Google's forum selection clause is enforceable under the *Phillips* inquiries, as well as this Court's prior precedent. Accordingly, this case should be dismissed.

## I. GOOGLE'S FORUM SELECTION CLAUSE HAS BEEN ENFORCED BY THIS COURT

Google's forum selection clause was enforced by this Court under virtually identical facts in a prior decision. *Person v. Google Inc.*, 456 F. Supp. 2d 488 (S.D.N.Y. 2006) (Patterson, J.) (transferring action under 28 U.S.C. § 1406(a) to Santa Clara County). The *Person* complaint, like the Complaint here, alleged that Google used its Quality Score to raise AdWords minimum bid prices for advertisers like plaintiff to reduce traffic to their sites. 456 F. Supp. 2d at 491-92. Like the Complaint here, plaintiff in *Person* alleged that Google entered agreements with more favored advertisers that provided these advertisers with preferential pricing. *Id.* The *Person* case involved a (somewhat less broad) forum selection clause that stated, "[any] dispute or claim arising out of or in connection with this Agreement shall be adjudicated in Santa Clara County, California." *Id.* at 493-94. Given that the conduct complained of here closely tracks the conduct complained of in *Person* and involves a similar (and broader) forum selection clause, the Court should follow the precedent set in *Person* and hold that venue in this Court is improper.

## II. THE FORUM SELECTION CLAUSE WAS REASONABLY COMMUNICATED TO TRADECOMET

There can be no genuine dispute that the forum selection clause here "was reasonably communicated to the party resisting enforcement." *Phillips*, 494 F.3d at 383 (citing *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006)). If a forum selection clause is stated in clear and unambiguous language, it is considered reasonably communicated. *See Effron v. Sun Line Cruises, Inc.* 67 F.3d 7, 9 (2d Cir. 1995). A forum selection clause is considered reasonably communicated to a party even if the party "clicked-through" a contract on the Internet in order to assent to it. *Novak v. Tucows, Inc.*, No. 06 Civ. 1909 (JFB) (ARL), 2007 WL 922306, at *11 (E.D.N.Y. Mar. 26, 2007); *Person*, 456 F. Supp. 2d at 493; *see also Weingrad v. Telepathy, Inc.*,

No. 05 Civ. 2024 (MBM), 2005 WL 2990645, *3-4 (S.D.N.Y. Nov. 7, 2005) (holding a party bound to a forum selection clause where assent was clicked); *Feldman v. Google Inc.*, 513 F. Supp. 2d 229, 236-38 (E.D. Pa. 2007) (same).

The current text of the forum selection clause was released in August, 2006. Wilburn Dec. ¶ 6. Plaintiff assented to that text some ten separate times on August 29, 2006. *Id.* ¶ 6. It assented yet again on November 28, 2006. *Id* ¶ 7.

The forum selection clause is presented in all-capital letters in plain language within a nine-paragraph contract. Thus, the forum selection clause was reasonably communicated to TradeComet. *See Person*, 456 F. Supp. 2d at 496-97 ("[T]here is no indication that Plaintiff did not have notice that the forum for suits against Defendant were to be brought in Santa Clara County. In order to do business with AdWords, Plaintiff had to assent to the terms of the contract."); *see also Feldman v. Google Inc.*, 513 F. Supp. 2d at 236-38.

### III. THE FORUM SELECTION CLAUSE IS MANDATORY

The forum selection clause at issue here is mandatory. A forum selection clause is mandatory, as opposed to permissive, "when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips*, 494 F.3d at 386 (citing *Boutari & Son, Wines and Spirits, S.A. v. Attiki Importers & Distributors, Inc.*, 22 F.3d 51, 52 (2d Cir. 1994)). The forum selection clause at issue here says that claims "shall be litigated exclusively in the federal or state courts of Santa Clara County, California, USA" and is mandatory on its face. *See Phillips*, 494 F.3d at 386 ("The parties' use of the phrase 'are to be brought' establishes England as an obligatory venue"); *Person*, 456 F. Supp. 2d at 494 (emphasizing the word *shall* in finding it "clear that the venue clause at issue was meant to be mandatory rather than permissive").

## IV. THE CLAIMS IN THIS SUIT ARE SUBJECT TO THE FORUM SELECTION CLAUSE

The allegations here fall squarely under the forum selection clause, which governs "all claims arising out of or relating to this Agreement or the Google program(s)." A forum selection clause "is not limited solely to the claims for breach of the contract that contains it." *CFirstclass Corp.*, 560 F. Supp. 2d at 329 (citing *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993)); *see also Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982) (forum selection clause covered federal antitrust actions); *Olnick v. BMG Entm't*, 138 Cal. App. 4th 1286, 1296-1300, 42 Cal. Rptr. 3d 268, 276-279 (Cal. Ct. App. 2006) (holding that a forum selection clause applied to tort claims that were not predicated on the existence of the agreement at issue where the "legal relationship between the[ ] parties emanates from th[e] Agreement").[5] As this Court has held, "a contractually-based forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties[.]" *CFirstclass Corp.*, 560 F. Supp. 2d at 329 (citing *Direct Mail Production Servs. Ltd. v. MBNA Corp.*, No. 99 Civ. 10550 (SHS), 2007 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000)).

The Agreement here requires that "all claims arising out of or relating to this agreement" be brought in Santa Clara County. The language of the Agreement unquestionably covers the claims at issue here. *Phillips*, 494 F.3d at 389 (stating that to "arise out of" means "to

---

[5] The enforceability of a forum selection clause is a procedural issue to which federal law is applied. *See Phillips*, 494 F.3d at 384-86. In the event that the Court finds it appropriate to construe the legal meaning of the specific language of the forum selection clause, the Agreement specifies that California law applies. *See id.*; Wilburn Dec., Ex. A, ¶ 9.

originate from a specified source") (citing Webster's Third New International Dictionary 117 (1981)); *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-129 (2d Cir. 2001) (stating that the term "relating to" is broader – "[it] is not necessarily tied to the concept of a causal connection").

The fundamental basis of all of Plaintiff's claims is that the alleged increase in the minimum bid prices for AdWords advertising reduced traffic to Plaintiff's website and, in that way, impaired Plaintiff's ability to expand its presence on the Internet. Cplt. ¶¶ 6-9, 31-55, 93-103, 106, 111, 117-19. Plaintiff asserts repeatedly that the Quality Score adjustments that allegedly raised its AdWords advertising costs meant that "SourceTool faced vastly higher prices to acquire search traffic," *id.* ¶ 8, had the effect of "blocking traffic to SourceTool," *id.* ¶ 52, amounted to a "cut off from Google's AdWords," *id.* ¶ 55, and amounted to a "unilateral terminat[ion of] the voluntary course of dealing [Google had] had with SourceTool," *id.* ¶¶ 8, 102. But for Plaintiff's repeated assertions that "Google's 'Landing Page Quality' metric [for AdWords] . . . targets and obstructs traffic" to Plaintiff's site, *id.* ¶ 93, there is no injury to Plaintiff – and no case.

Hence, the Agreement, with its forum selection clause, "was the source of the right, duty and injury" asserted by Plaintiff and should be held to govern its claims. *Phillips*, 494 F.3d at 392; *see also Roby*, 996 F.2d at 1361, 1363 (reasoning that the misconduct alleged would not have occurred but for the contractual relationship between the parties; the misconduct necessarily "relate[d] to" the required agreements); *Olnick*, 138 Cal. App. 4th at 1300, 42 Cal. Rptr. 3d at 279.

Google is aware of no authority that would support any outcome here other than dismissal or transfer. The one case Plaintiff cited at the status conference, *Phillips*, in fact

supports dismissal. In *Phillips*, plaintiff entered into a recording contract with one of the defendants. *Id.* at 381. Plaintiff claimed that the first album was authorized under the contract, but that a second album produced over plaintiff's objections was not. *Id.* at 381-82. Plaintiff sued several defendants for copyright violations based on publication by them of works from the second, unauthorized album. The Second Circuit held that the copyright claims were not governed by the venue clause, which only applied to claims that "arise out of" the agreement. *Id.* at 382. The copyright claims did not "arise out of" the agreement because the copyright infringement alleged had nothing to do with the agreement. Unauthorized publication of the works would have been copyright infringement had no agreement ever existed, and so the identical claims could have been brought whether there was an agreement or not. *Id*. at 390. As the court reasoned, the plaintiff asserted no "rights or duties" under the contract. Instead, "[b]ecause the recording contract is only relevant as a defense in this suit, we cannot say that Phillips' copyright claims originate from, and therefore 'arise out of,' the contract." *Id.* at 391. The court, moreover, carefully distinguished a Seventh Circuit case with language similar to that at issue here – *Abbot Laboratories v. Takeda Pharm. Co.,* 476 F.3d 421, 422 (7th Cir. 2007) ("arising from, concerning, or in any way related to") – and cautioned that analogies to other cases are "useful only to the extent those other cases address contract language that is the same or substantially similar." *Phillips*, 494 F.3d at 390 (quoting *Wyeth & Brother Ltd v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997)).

The forum selection clause at issue here more than survives the inquiry conducted by the court in *Phillips*. As explained above, the AdWords agreement is precisely the source of the "rights or duties" at issue in the Complaint – the terms at which Google provided AdWords to Plaintiff. Without the Agreement – and thus, without AdWords – Plaintiff's particular claim

-10-

against Google would not exist, and Google would owe Plaintiff none of the alleged duties that form the basis of the Complaint. Moreover, as mentioned, the forum clause at issue here is broader than that in *Phillips*. *Id.* at 389.

The claims in this lawsuit are thus unequivocally subject to Google's forum selection clause and were improperly filed in this district.

V. **ENFORCEMENT OF THE FORUM SELECTION CLAUSE IS NOT UNFAIR, UNREASONABLE, UNJUST, OR INVALID FOR FRAUD OR OVERREACHING**

The forum selection clause in the Agreement is not unfair, unreasonable, unjust or invalid. *See Feldman*, 513 F. Supp. 2d at 235-243 (holding AdWords forum selection clause fair, reasonable, valid, and enforceable). As the Supreme Court has held, forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 596-597 (1991) (upholding validity of forum selection clause in a form contract). A party "claiming unreasonableness of a forum selection clause bears a heavy burden: in order to escape the contractual clause, he must show that 'the trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *New Moon Shipping Co., Inc.*, 121 F.3d at 32 (quoting *M/S Bremen*, 407 U.S. at 18).

Plaintiff can make no allegation that the enforcement of the forum selection clause to which it agreed would be unreasonable or unjust. TradeComet is a sophisticated plaintiff led by an experienced, educated business person who had met in person with Google representatives on multiple occasions, Cplt. ¶¶ 49, 51-53 – hardly "the picture of a victim of a contract of adhesion painted by the Second Circuit." *Person*, 456 F. Supp. 2d at 495-96 (referencing language in *Klos*

*v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997)).  Indeed, Plaintiff here assented to the Agreement no less than eleven times, Wilburn Dec. ¶¶ 6-7, and therefore had ample "opportunity to view and reject [Google's] terms before spending any [additional] money with AdWords." *Person*, 456 F. Supp. 2d at 497 (holding that "[s]crutiny of the contract between Plaintiff and Defendant does not uphold Plaintiff's allegations of unfairness").

Moreover, the clause appropriately asserts venue where Google's headquarters is located. *Id.* at 496 ("The fact that [Google] is located in California suggests another, highly plausible reason why it would include a forum selection clause – in order to locate the myriad suits inevitably brought against such a sizeable company in a single, convenient, forum") (citing *Carnival Cruise Lines*, 499 U.S. at 595).  Plaintiff's argument at the March 17 status conference that New York is "more convenient" than California is thus inaccurate as well as unavailing.  "[A] forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel."  *Effron*, 67 F.3d at 10-11 (ordering dismissal in favor of the agreed-upon forum – Athens, Greece – because allegations of inconvenience failed to "meet the heavy burden of proof" required to set aside a forum-selection clause).  Finally, there is no allegation that the forum selection clause was the product of fraud or overreaching.

Because Plaintiff filed this action in the wrong forum, the Court should dismiss the Complaint.  *See CFirstclass*, 560 F. Supp. 2d at 324 (dismissing claims for improper venue under Rule 12(b)(1) in light of forum selection clause); *Phillips*, 494 F.3d at 393 (affirming dismissal of claim under Rule 12(b)(3) in light of forum selection clause); *Person*, 456 F. Supp. 2d at 497-98 (transferring action under 28 U.S.C. § 1406 in light of forum selection clause).

## CONCLUSION

For the reasons stated above, the Complaint should be dismissed.

Dated: March 31, 2009

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION

*[signature: Jonathan M. Jacobson]*

Jonathan M. Jacobson
Susan A. Creighton
Chul Pak
Sara Ciarelli Walsh
1301 Avenue of the Americas
40th Floor
New York, New York  10019
(212) 497-7700 (Telephone)
(212) 999-5899  (Telecopier)

*Attorneys for Defendant, Google Inc.*