IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                              :
**TRADECOMET.COM LLC,**                       :          CIVIL ACTION NO. 09-1400 (SHS)
                                              :
            **Plaintiff**                     :
                                              :
        **v.**                                :
                                              :
**GOOGLE INC.,**                              :
                                              :
            **Defendant**                     :
_____:


<u>**TRADECOMET.COM LLC'S MEMORANDUM OF LAW**</u>
<u>**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>
<u>**PURSUANT TO RULES 12(b)(1) AND 12(b)(3)**</u>

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................... 2

      A.    Google's Unlawful Conduct Is Unrelated to the AdWords
           Agreements ....................................................................................... 2

      B.    Google Relies Upon the Wrong AdWords Agreement In Seeking
           Dismissal ........................................................................................ 3

ARGUMENT ...................................................................................................... 5

I.     The AdWords Forum Selection Clause Does Not Encompass TradeComet's
      Antitrust Claims. ......................................................................................... 5

      A.    The 8/29/06 AdWords Agreement is Not Operative For the
           Conduct at Issue .............................................................................. 7

      B.    Google's Boilerplate Merger Clause Cannot Be Extended
           Retroactively to Eliminate TradeComet's Choice of Venue for Its
           Antitrust Claims ............................................................................ 11

      C.    The Forum Selection Clauses in the Operative Agreements Fail to
           Encompass TradeComet's Section 1 Claim. .......................................... 15

II.    Google Has Not Submitted Evidence Sufficient to Show that Google "Resonably
      Communicated" the Terms and Conditions in the 8/29/06 Agreement to
      TradeComet ................................................................................................ 15

III.   The Forum Selection Clause in the 8/29/06 Agreement is Unenforceable. .................... 18

IV.   Dismissal Pursuant to Either Rule 12(b)(1) or Rule 12(b)(3) is Procedurally
      Improper Here and Transfer Under § 1404 is Unwarranted. .......................... 20

CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abbott Laboratories v. Takeda Pharm. Co.*, 476 F.3d 421 (7th Cir. 2007).................................. 9

*Alexander v. Superior Court,*
    8 Cal. Rptr. 3d 111 (Cal. Ct. App. 2003) ........................................................... 20

*Allez Med. Applications, Inc. v. Allez Spine, LLC,*
    No. G037314, 2007 WL 927905 (Cal. Ct. App. March 29, 2007)...................................... 13

*Am. Eagle Oufitters, Inc. v. Tala Bros. Corp .*, 457 F. Supp. 2d 474 (S.D.N.Y. 2006) .............. 23

*Amtower v. Photon Dynamic, Inc.*, 7 Cal. Rptr. 2d 35 (Cal. Ct. App. 2008).............................. 12

*Arista Films, Inc. v. Gilford Securities, Inc.*, 51 Cal. Rptr. 2d 35 (Cal. App. Ct. 1996) ............. 13

*B&H Manufacturing Co., v. Bright,*
    F038408, 2002 WL 31820963 (Cal. Ct. App. 2002)......................................................... 10

*Badie v. Bank of Am.*, 79 Cal. Rptr. 2d 273 (Cal. Ct. App. 1998) ............................................... 10

*Bancomer, S.A. v. Superior Court*, 52 Cal. Rptr. 2d 435 (Cal. Ct. App. 1996).....................11, 13

*Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005)...................................... 12

*Barker v. Estelle*, 913 F.2d 1433 (9th Cir. 1989)........................................................................ 11

*Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718 (2d Cir. 1982) ............................ 6, 9

*Bolter v. Superior Court*, 104 Cal. Rptr. 2d 888 (Cal. Ct. App. 2001) ................................18, 19

*Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324 (S.D.N.Y. 2008)............................. 9, 21

*Choice Security Sys., Inc. v. AT&T Corp.,*
    141 F.3d 1149, 1998 WL 153254 (1st Cir.1998) .........................................................12, 13

*Coalition for ICANN Transparency v. Verisign*, 452 F. Supp. 2d 952 (N.D. Cal. 2006)............. 11

*Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165 (N.D. Cal. 2002) .............................................18, 19

*Consolidated Gas Supply Corp. v. FERC*, 745 F.2d 281 (4th Cir. 1984) ............................... 9, 10

*Coon v. Nicola*, 21 Cal. Rptr. 2d 846 (Cal. Ct. App. 1993)........................................................ 14

*Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123 (2d Cir. 2001)...................................9

*Credit Suisse Securities (Usa) LLC v. Hilliard,* 469 F.Supp.2d 103 (S.D.N.Y., 2007) ............... 15

*D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95 (2nd Cir., 2006) .....................................22, 23

*Dean Witter Reynolds Inc. v. Prouse*, 831 F. Supp. 328 (S.D.N.Y. 1993)................................. 14

*E & J Gallo Winery v. Encana Energy Servs., Inc.*,
    388 F. Supp. 2d 1148 (E.D. Cal. 2005) ........................................................... 6, 23

*Feldman v. Google*, 513 F. Supp. 2d 229 (E.D. Pa. 2007) ....................................................16, 19

*Fibra-Steel, Inc. v. Astoria Industries, Inc.*, 708 F. Supp. 255 (E.D. Mo. 1989)........................ 22

*General Environmental Science Corp. v. Horsfall*,
    25 F.3d 1048, 1994 WL 228256 (6th Cir. 1994)............................................................10, 11

*Great American Ins. Co. v. Norwin School Dist.*, 544 F.3d 229 (3d Cir. 2008).......................... 9

*Hunt v. Superior Court*, 97 Cal. Rptr. 2d 215 (Cal. Ct. App. 2000) .......................................... 10

*Imation Corp. v. Quantum Corp.*,
    No. Civ. 01-1798, 2002 WL 385550 (D. Minn. March 8, 2002) ......................................... 11

*Langdon v. Google, Inc.*, 474 F. Supp. 2d 622 (D.Del. 2007) .................................................... 20

*Light v. Taylor*, No. 05 Civ. 5003 WHP, 2007 WL 274798 (S.D.N.Y. Jan. 29, 2007) .............. 11

*Marel Corp. v. Encad Inc.*, 178 F. Supp. 2d 56 (D.P.R. 2001)................................................... 22

*Mason v. CreditAnswers, LLC*,
    Civ. No. 07cv1919-L (POR), 2008 WL 4165155 (S.D. Cal. Sept. 5, 2008) ....................... 15

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King*, 804 F. Supp. 1512 (M.D.Fla. 1992) ........ 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ..................... 19

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006).................................................... 14

*Olinick v. BMG Entm't.*, 42 Cal. Rptr. 3d 268 (Cal. Ct. App. 2006) ......................................... 9

*Person v. Google Inc.,* 456 F.Supp.2d 488 (S.D.N.Y. 2006) ...............................................*passim*

*Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) ...............................................7, 10, 14

*Private One of New York v. JMRL Sales & Serv.*, 471 F. Supp. 2d 216 (E.D.N.Y. 2007)........... 15

*Rescuecom v. Google,* No. 06-4881-cv, 2009 WL 875447 (2d Cir. 2009) ............................... 20

*Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993)..................................................... 9

*San Francisco Cnty Coll. Dist. v. Keenan & Assoc.,*
    A115994, 2007 WL 4099543 (Cal. Ct. App. 2007) ............................................. 14

*Sec. Watch, Inc. v. Sentinel Sys. Inc.,* 176 F.3d 369 (6th Cir. 1999)......................................... 12

*Stewart Org. v. Ricoh Corp.*, 487 U.S. 22 (1988) .................................................... 21

*Taracorp, Inc. v. NL Industries, Inc.*, 73 F.3d 738 (7th Cir. 1996)........................................... 10

*United States v. Microsoft*, 253 F.3d 34 (D.C.Cir. 2001) ............................................. 6

*United States v. Nat. City Lines, Inc.,* 334 U.S. 573, 582-86 (1948) ......................................... 21

*Waters v. Earthlink, Inc.,* 91 Fed. App'x 697,698 (1st Cir. 2003)............................................. 17

*Williams v. Deutsche Bank Securities, Inc.,*
    No. 04 Civ. 7588 (GEL), 2005 WL 1414435 (S.D.N.Y. 2005) .................................... 8

*Wilmot v. McNabb,* 269 F.Supp.2d 1203 (N.D. Cal. 2003)........................................ 19

## FEDERAL STATUTES

15 U.S.C. § 4.................................................................................................................. 21

15 U.S.C. § 15 ...............................................................................................................20, 21

15 U.S.C. § 22................................................................................................................ 20

15 U.S.C. § 26................................................................................................................ 21

28 U.S.C. § 1331............................................................................................................ 21

28 U.S.C. § 1337............................................................................................................ 21

28 U.S.C. § 1391............................................................................................................ 21

28 U.S.C. § 1404............................................................................................................21, 22

## MISCELLANEOUS

BLACK'S LAW DICTIONARY 45 (8TH ED. 2004)………......………....………………………....11

17 JAMES WM. MOORE, ET AL.,
MOORE'S FED. PRAC. § 111.04[4][C] (3D ED. 2009) …………….....………………………......21

14D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 3803.1………....……..21

Plaintiff TradeComet.com LLC ("TradeComet") respectfully submits this memorandum in opposition to the Motion to Dismiss Based on Lack of Subject Matter Jurisdiction and Improper Venue filed on March 31, 2009 by Defendant Google Inc. ("Google" or "Defendant"). For the reasons set forth below, Defendant's motion should be denied.

## PRELIMINARY STATEMENT

Google attempts to drag TradeComet across the country to litigate this case by trying to expand a forum selection provision in its AdWords agreement to cover antitrust claims that have no grounding in the terms of the underlying agreement. Google also attempts to conceal the fact that the agreement actually at issue in this case – namely, the one that was in effect at the time Google initiated the unlawful anticompetitive conduct alleged in TradeComet's complaint – contains a completely different forum provision from the one Google cites. Critically, the provision that was actually operative has none of the "related to" or "arising from" language upon which Google exclusively relies in its attempt to prevent TradeComet from availing itself of the venue provisions of the federal antitrust laws.

It is also notable that Google's approach in this case is directly contrary to its approach in *Person v. Google*, 456 F. Supp. 2d 488 (S.D.N.Y. 2006) (the case upon which Google primarily relies in seeking dismissal). Indeed, in *Person*, Google relied on a broader venue provision in an earlier AdWords agreement that had been followed by a subsequent version that included the same narrow venue provision that it seeks to avoid here. In a classic case of "heads I win, tails you lose," where (in *Person*) it was disadvantaged by a subsequent, narrow venue provision, Google simply ignored the intervening change, but here where it thinks it is advantaged by an intervening change, it makes a novel and legally unsupported argument to claim disingenuously

that the subsequent AdWords agreement supersedes the one in effect when TradeComet opened its accounts. Google's outcome-driven change in views should not be permitted to dictate venue.

In addition to pointing the Court to the wrong AdWords agreement, Google also fails to satisfy its burden of demonstrating that it "reasonably communicated" its desired change to the AdWords terms and conditions to TradeComet. The only "evidence" Google cites is a screen shot containing narrowly selected information that was provided by a Google employee who never heard of TradeComet prior to this litigation. Google includes no mention of the Google representative tasked with servicing TradeComet, who had routine access to TradeComet's account and even opened an account on at least one occasion.

Moreover, as a monopolist, Google's attempt to force nascent competitors like TradeComet, which Google undisputedly destroyed, to litigate antitrust claims against Google only in a single county in California (i.e., in Google's backyard) should not be permitted. Google's selective enforcement of its forum provision for litigation and strategic advantage underscores the fundamental unfairness of its actions.

## FACTUAL BACKGROUND

### A. Google's Unlawful Conduct Is Unrelated to the AdWords Agreements

As alleged in TradeComet's complaint, Google is a monopolist in the relevant market for search advertising. Both United States federal antitrust enforcement agencies recently have investigated Google and concluded that it dominates the search-advertising market. Compl. ¶¶ 3, 56-66, 104-108. TradeComet operates a competing search website known as "Sourcetool.com" (or "SourceTool") that attracts highly-valued search traffic of businesses seeking to buy or sell products and services to other businesses. *Id.* ¶¶ 4-6, 37-55. TradeComet began operations in 2005 and initially met with great success; SourceTool rose to become the second-fastest growing

website in the world. *Id.* It advertised on Google and began to receive considerable search traffic, generating significant revenue both for TradeComet and for Google. *Id.* Indeed, Google embraced SourceTool's success and the quality of its service, naming it "Site of the Week." *Id.* However, by mid-2006 Google recognized that sites like SourceTool (individually and collectively with other vertical search sites) posed a substantial threat to Google's dominance in the search advertising market. *Id.* ¶¶ 70-90. As a result, Google unilaterally took steps to block the competitive threat of vertical search sites. As part of that effort, Google changed its voluntary course of dealing with SourceTool and effectively refused to deal further with the plaintiff by, among other things, manipulating its auctions so that SourceTool faced vastly higher prices, thereby strangling the primary source of search traffic to SourceTool. *Id.* ¶¶ 46-55. Google also entered into "preferred" agreements with certain of its competitors, including "Business.com." Through these agreements, Google supported these sites in order to eliminate rival search sites by, among other things, artificially propping up its chosen sites with the purpose and intent of preserving Google's market dominance. *Id.* ¶¶ 9, 115-120. On February 17, 2009, TradeComet filed suit against Google alleging that Google violated Section 1 and Section 2 of the Sherman Act based upon the foregoing and related conduct.

**B.   Google Relies Upon the Wrong AdWords Agreement In Seeking Dismissal**

Google has stated both in correspondence with the Court and in its brief that venue is improper under the "terms and conditions" of an AdWords agreement that Google contends TradeComet agreed to on August 29, 2006 (the "8/29/06 Agreement"). The 8/29/06 Agreement includes a forum selection provision that states:

> all claims arising out of or relating to this agreement or the Google program(s) shall be litigated exclusively in the federal or state courts of Santa Clara County, California.

Howley Decl., Ex. 1 at 3.  In this case, Google contends that this agreement has retroactive effect and replaces earlier versions of its AdWords Agreement.  Google fails to mention that it took a directly contrary stance with regard to the supposed retroactive effect of its forum provision in the *Person* case upon which it relies here.  In *Person*, Google relied upon an earlier version of its AdWords agreement from 2003 (the "2003 Agreement"), ignoring intervening versions of its agreement dated April 19, 2005 and May 23, 2006 – each of which had the same narrower-scope forum clause, which replaced the clause in the 2003 Agreement.  456 F. Supp. 2d 493.  In *Person*, unlike this case, Google did not argue that these later agreements superseded conduct occurring under the 2003 Agreement.[1]  The reason, no doubt, is due to the fact that in *Person* the intervening AdWords agreement narrowed the venue provision (thus eviscerating Google's arguments for dismissing the Person complaint on venue grounds).[2]

Here, the conduct alleged in the Complaint began in mid-2006 while earlier versions of the AdWords agreement were in effect.  Compl. ¶¶ 46-49; Howley Decl., Ex. 2, 3.  By citing only the 8/29/06 Agreement, Google seeks to evade the plainly narrower language of the forum selection provision in the AdWords agreements dated April 19, 2005 and May 23, 2006, which

---

[1] In its briefing in *Person*, Google argued that Mr. Person's claims arose out of the 2003 Agreement. Howley Decl., Ex. 6 at 1;  Howley Decl., Ex. 7 at ¶¶ 6-8.

[2] The plaintiff in *Person* (*i.e.*, the party resisting Google's Rule 12 motion there) did not raise the issue of the intervening AdWords agreement.  Interestingly, Google's own AdWords representative apparently thought that new agreements have only prospective, rather than retroactive, effect.  *See* Howley Decl., Ex. 10 at 47:14-48:10, 74:2-75:10.

were in effect when the relevant TradeComet accounts were opened and when Google's initiated its alleged illegal conduct (collectively the "Operative Agreements").[3]  In particular, the forum provisions contained in the "terms and conditions" of those two previous AdWords agreements that extend back to 2005 did <u>not</u> include the broad "arising out of" or "relating to" language, which are the touchstones of Google's attempt to sweep its exclusionary conduct within the 8/29/06 Agreement.  Instead, the earlier versions of the forum provision merely state that "The Agreement must be construed as if both parties jointly wrote it, governed by California law except for its conflicts of laws principles and adjudicated in Santa Clara County, California." Howley Decl., Exs. 2 at 1-2; 3 at 2.

The broad "arising out of or relating to" language Google quoted to the Court was only added *after* Google acted to drive TradeComet from the market, and only *after* Google could anticipate that competitors like TradeComet would contest Google's anticompetitive conduct in the courts.  Moreover, the 8/29/06 Agreement – which reinstated language similar to the "arising out of" language of the 2003 Agreement – took effect only 2 days before Google filed its reply in *Person*.  Howley Decl., Ex. 6 at 1, 10.

## ARGUMENT

### I.    The AdWords Forum Selection Clause Does Not Encompass TradeComet's Antitrust Claims.

Google seeks to avoid venue in this jurisdiction by attempting to link its relationship with TradeComet pursuant to its AdWords contract with the *antitrust* claims alleged in TradeComet's complaint.  TradeComet's antitrust claims, however, are not grounded in allegations that Google

---

[3] The Operative Agreements produced by Google in discovery contain identical forum selection clauses. Therefore, regardless of which of the two Operative Agreements Google contends was actually in effect at the time of Google's anticompetitive conduct, the narrow language and the coinciding effect of the forum clause is the same.

breached its AdWords agreement as part of its ordinary business relationship with TradeComet.[4] Nor is TradeComet (contrary to Google's attempt to argue otherwise) claiming Google's ability to charge varying prices – or even "high" prices – to advertisers as part of its keyword auctions amounts to a breach of the AdWords contract.[5] Rather, TradeComet alleges that Google engaged in a campaign of willful monopolistic conduct, including intentionally manipulating its auctions to eliminate competitive threats from vertical search sites like TradeComet. Such a claim has no basis in, and is not even related to, a claim arising from the underlying AdWords agreement.[6] Moreover, even legally-acquired *contractual* rights – including its forum provision – as a matter of law provide no defense for (and are simply irrelevant to) Google's *antitrust* liability. *See United States v. Microsoft*, 253 F.3d 34, 63 (D.C. Cir. 2001) (explaining that defendant's position that use of lawfully-acquired intellectual property rights cannot give rise to antitrust liability "is no more correct than the proposition that use of one's personal property, such as a baseball bat, cannot give rise to tort liability").

---

[4] This is one of many factual departures from *Person* – the case upon which Defendant primarily relies. Mr. Person's claim, for example, "call[ed] for interpretation and application of the Agreement" because he complained specifically about the "policies and procedures under the AdWords program," which – unlike here – Google relied upon for certain defenses. Howley Decl. Ex. 5 at 5. In fact, Mr. Person's complaint specifically cites the web addresses for certain Google policies and asserts that those particular policies are fraudulent. Howley Decl., Ex. 4 at ¶¶ 13, 13A. TradeComet does not allege any such fraud.

[5] Google wrongly contends that dismissal is appropriate because "[t]he fundamental basis of all of Plaintiff's claims is that the alleged increase in ... prices ... impaired Plaintiff's ability to expand," and that "[b]ut for [the price increase] there is no injury to Plaintiff." Def's Br. at 9. A substantially similar argument was rejected as "completely untenable" in *E & J Gallo Winery v. Encana Energy Servs., Inc.*, 388 F. Supp. 2d 1148, 1162 (E.D. Cal. 2005) (refusing to apply forum selection clause to plaintiff's antitrust claims despite the fact that "the damages ... suffered were the result of prices charged by Defendants under the agreement") (emphasis omitted). Accordingly, the fact that there is *some* linkage between the AdWords agreement and pricing – it could not be otherwise – does not convert the substance of the antitrust claim into a contractual claim.

[6] The allegations in this complaint also do not amount to "dealer termination" claims under Section 1 of the Sherman Act of the sort that the Second Circuit found to be included within the forum selection provision in *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982). Moreover, as explained, the venue provision in *Bense* was much broader than the one in the Operative Agreements.

Google cites *Phillips v. Audio Active Ltd.* 494 F.3d 378, 386-90 (2d Cir. 2007), in requesting that this Court dismiss TradeComet's complaint. As Google states in its brief, the Second Circuit set forth a four-part analysis in *Phillips* to determine whether to dismiss the claims because of the forum selection clause:

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause. If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust or that the clause was invalid for such reasons as fraud and overreaching.'

*Id.* at 383-84.

As mentioned above, Google places the entire weight of its argument on its claim that the 8/29/06 Agreement and its forum provision is the operative agreement for all of the conduct at issue in this case. If this is proven to be wrong (which it is), then Google has no other argument that saves it from having to proceed in this Court. Accordingly, this Section I starts with the third element of the *Phillips* analysis, which addresses the scope of the forum selection provision, before moving to the other elements of the *Phillips* analysis in Sections II and III.

### A.      The 8/29/06 AdWords Agreement is Not Operative for the Conduct at Issue

TradeComet had several AdWords accounts open from the time that Google engaged in the anticompetitive conduct alleged in the complaint until August 29, 2006, which is the date Google alleges that TradeComet entered into the AdWords agreement that Google has exclusively cited in this case. The 8/29/06 version of the AdWords agreement contains a forum selection provision that specifically references "all claims arising out of or relating to" the agreement. Howley Decl., Ex. 1. As this Court noted at the status hearing, forum provisions that

include "arising out of or relating to" are "just about as broad as you can get." Howley Decl., Ex. 9 at 12. The version of AdWords in effect during the time of the primary anticompetitive conduct alleged in the complaint, however, did *not* include any of that broad language. Rather, the Operative Agreements that TradeComet "clicked through" state only that "[t]he Agreement must be ... adjudicated in Santa Clara County, California." Howley Decl., Exs. 2, 3. The broader "arising out of" language was added to Google's terms and conditions only after its anticompetitive campaign against TradeComet and other vertical search engines was underway, perhaps in part as a belated and retroactive effort to erect impediments in the paths of victims seeking legal redress.[7]

The gulf between the version of the forum provision in the AdWords agreements actually at issue – i.e., the Operative Agreements – and the version Google cited to this Court at the status hearing and in its brief could not be wider. This is seen most plainly in Google's own argument in its brief where it repeatedly cites to the importance of the inclusion of the language "arising out of or relating to." *See generally* Def's Br. at 8-11; *id.* at 10 (Google "caution[ing] that analogies to other cases are 'useful only to the extent those other cases address contract language that is the same or substantially similar'" to the "arising out of or relating to" language upon which Google relies in this case); *see also Williams v. Deutsche Bank Securities, Inc.*, No. 04 Civ. 7588 (GEL), 2005 WL 1414435, at *4-6 (S.D.N.Y. June 13, 2005) (discussing, in the context of choice of law provisions, the importance of the absence of "magic words" such as "arising out of or relating to" or "in connection with").

---

[7] *See also* the discussion at 10, *infra*, noting the contemporaneity of the August 2006 change in the AdWords contract to the venue dispute in *Person*.

Moreover, **all of the cases** cited by Google in arguing that TradeComet's antitrust claims are subject to the forum selection clause (Def's Br. at 8-11) are distinguishable on this same basis – i.e., they **all** involve forum selection clauses that include references to "**arising out of**," "**relating to**," "**all claims**" or other clear indications of breadth beyond the more narrow "adjudicated" language in either of the Operative Agreements:

- *Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008), concerned a clause that read "**all disputes arising hereunder**";

- *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982), concerned a clause that read "**any suits or causes of action arising directly or indirectly from**" the agreement;[8]

- *Olinick v. BMG Entm't*, 138 Cal. App. 4th 1386, 1291, 42 Cal. Rptr. 3d 268, 272 (Cal. Ct. App. 2006), concerned a clause that read "**all dispute arising from**" the agreement;

- *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 382, 386-87, 389 (2d Cir. 2007), concerned a clause that read "**any legal proceedings that may arise out of**" the agreement;

- *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993), concerned an arbitration clause that read "**dispute[s], difference[s], question[s] or claim[s] relating to**" the agreement and a forum selection clause that read "**all purposes of and in connection with**" the agreement.[9]

- *Abbott Laboratories v. Takeda Pharm. Co.*, 476 F.3d 421, 422 (7th Cir. 2007), concerned a clause that read "**dispute[s] between [the parties] arising from, concerning or in any way related to**" the agreement.

---

[8] *Bense* and *Cfirstclass* are also distinguishable for the additional reason that the plaintiffs in those cases were alleging that the defendant breached the contract. *See Bense*, 683 F.2d at 720 ("the gist of Bense's claim is that Interstate wrongfully terminated the agreement thereby damaging Bense"); *Cfirstclass Corp*, 560 F. Supp. 2d at 330 (claims were for "failure to deliver . . . aircraft" that "are expressly premised on assertions regarding [plaintiff's] rights involving the aircraft pursuant to the two agreements").

[9] Defendant also cites *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123 (2d Cir. 2001), which does not even involve a forum selection clause; the case interprets the words "relating to" and "arising out of" under Connecticut and Ohio law in order to determine whether insurance coverage is provided by a contract.

As an initial matter, basic principles of contractual interpretation hold that parties' choice of words – and, importantly, their decision to choose *different* words – must be accounted for in interpreting a contract.[10] Here, Google decided to choose different words in the 8/29/06 Agreement in order to expand the coverage of its forum selection provision. This deliberate use of broader language (only days before filing its reply in *Person*) at a minimum indicates that Google felt the provision in its then-existing agreement (i.e., the Operative Agreements) did not cover all conduct that would be swept into the forum selection provision in the 8/29/06 Agreement.[11] This interpretation is bolstered by the canons of contractual interpretation in California which, like the Court in *Phillips*, require that the interpretation of forum selection clauses be based on the plain meaning of the language used. *See, e.g.*, *Hunt v. Superior Court*, 81 Cal. App. 4th 901, 908-09, 97 Cal. Rptr. 2d 215, 220 (Cal. Ct. App. 2000).[12]

Indeed, under California law, TradeComet's claims would fall outside even the broader language of the 8/29/06 Agreement. California courts have held, for example, that forum selection clauses containing the "arising from" language may still require interpretation of the underlying contract to determine whether the claim actually is grounded in the contract in order for the clause to have legal effect. *See B&H Manufacturing Co., v. Bright*, F038408, 2002 WL

---

[10] *See, e.g.*, *Great American Ins. Co. v. Norwin School Dist.*, 544 F.3d 229, 246 (3d Cir. 2008) ("we must assume that the choice of different words was deliberate"); *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744 (7th Cir. 1996) ("when parties to the same contract use such different language to address parallel issues ..., it is reasonable to infer that they intend this language to mean different things"); *Consolidated Gas Supply Corp. v. FERC*, 745 F.2d 281, 287 (4th Cir. 1984) (recognizing as "a generality" that "broad changes in phraseology signify differences in meaning").

[11] Moreover, under California law, the rule that an ambiguous contract term must be interpreted against the party who prepared it, applies with particular force in cases where, as here, there are adhesion contracts. *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 780, 79 Cal. Rptr. 2d 273, 287 (Cal. Ct. App. 1998).

[12] Google concedes that California law applies to the Court's analysis of the scope of the forum selection clause. Def's Br. at 8 n.5.

31820963 (Cal. Ct. App. Dec. 17, 2002) (interpreting clause that read "any dispute arising from or in connection with the by-laws"); *Bancomer, S.A. v. Superior Court*, 44 Cal. App. 4th 1450, 1453, 52 Cal. Rptr.2d 435, 438 (Cal. Ct. App. 1996) (interpreting clause that read "[a]ny conflict which may arise regarding the interpretation or fulfillment of this contract").[13]

Finally, the plain meaning of "adjudicate" is "[t]o rule upon judicially." BLACK'S LAW DICTIONARY 45 (8th ed. 2004); *see also Barker v. Estelle*, 913 F.2d 1433, 1440 n.12 (9th Cir. 1989) (case citing Black's Dictionary in holding "adjudicate" to mean "'to determine finally' or 'adjudge,' which means 'to decide, settle or decree'" in context of double jeopardy analysis). No ruling upon the contract is necessary in this case in order for TradeComet to succeed on its antitrust claims and, therefore, no "adjudication" of the contract is required. Accordingly, the forum selection provision is not operative for TradeComet's antitrust claims.

### B. Google's Boilerplate Merger Clause Cannot Be Extended Retroactively to Eliminate TradeComet's Choice of Venue for Its Antitrust Claims

Google also asserts *without any argument or analysis* that the 8/29/06 Agreement is operative rather than the prior AdWords agreement that was in effect at the time Google initiated the conduct giving rise to this lawsuit. As an initial matter, as discussed in the Factual

---

[13] *See generally Gen. Envtl. Sci. Corp. v. Horsfall*, 25 F.3d 1048, 1994 WL 228256, *8-9 (6th Cir. 1994) (forum clause did not encompass plaintiff's RICO and state law claims arising from parties' business relationships where agreement was "merely one of the final manifestations" of those relationships); *Light v. Taylor*, No. 05 Civ. 5003 WHP, 2007 WL 274798, at *6 (S.D.N.Y. Jan. 29, 2007) (clause that read "[a]ny dispute regarding this Agreement" was applicable only to disputes "directly concerning the underlying contract"); *Coalition for ICANN Transparency v. Verisign*, 452 F. Supp. 2d 924, 932 (N.D. Cal. 2006) (refusing to apply clause to antitrust claims because claims did not involve agreement and relationship to the agreement was too "attenuated"); *Imation Corp. v. Quantum Corp.*, No. Civ. 01-1798, 2002 WL 385550, at *2, 5-6 (D. Minn. March 8, 2002) (antitrust claims not covered by clause requiring "[a]ll disputes arising hereunder shall be adjudicated ... in Santa Clara County, California" where claims involve "conduct of [the defendants] that occurred prior to the signing of the ... agreement and... conduct of [one defendant] in relation to" others not part of agreement).

Background above, Google's position in this case regarding the supposed retroactive effect of changes to its AdWords agreement is directly contrary to its argument in *Person*. *See infra* at 3.

In addition to Google's outcome-driven change in views regarding the retroactive effect of changes to the terms and conditions, it also argues that the language "expressly supersedes and replaces all prior agreements" in the 8/29/06 Agreement should be taken to mean that all claims an advertiser may have as a result of Google's prior conduct must now be subject to the terms of the 8/29/06 Agreement. Def's Br. at 4. This language, however, amounts to nothing more than a boilerplate "merger" or "integration" provision. Such provisions are typically included in agreements to ensure that parole evidence of contractual intent is not admissible to controvert the plain terms of the agreement. *See, e.g.*, *Amtower v. Photon Dynamic, Inc.*, 158 Cal. App. 4th 1582, 1609, 71 Cal. Rptr. 3d 361, 384 (Cal. Ct. App. 2008) ("The purpose of an integration clause is to preclude the introduction of evidence which varies or contradicts the terms of the written instruments. It does not function to meld the documents it mentions.") (citations omitted).

In its brief, Google simply asserts without argument that its expansive interpretation of its boilerplate merger clause has retroactive effect. In so doing, Google completely overlooks the mass of cases holding that such boilerplate merger clauses are prospective only. *See Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 283 (2d Cir. 2005) (declining to find that a later enacted merger clause that provided that it "supersedes all prior agreements" repudiated prior agreements between the parties because "as a legal matter, that is not the way that merger clauses are typically understood"); *Sec. Watch, Inc. v. Sentinel Sys. Inc.*, 176 F.3d 369 (6th Cir. 1999) (reversing district court decision to apply a 1994 contract provision to conduct taking place prior to 1994 where the provision was not included in the party's prior contracts); *Choice Sec. Sys., Inc. v. AT&T Corp.*, 141 F.3d 1149, 1998 WL 153254, at *1 (1st Cir. 1998) (rejecting

defendant's argument that "the run-of-the-mill integration clause [defendant] aggrandizes as a 'supersedure' clause" had retroactive effect).

There simply is no basis for this Court to extend the standard merger provision in Google's 8/29/06 Agreement to cover prior conduct that was the subject of the previous versions of Google's AdWords agreement. Indeed, the inclusion of additional language that the agreement is limited to "the subject matter hereof" is an unambiguous statement that prior transactions or business between the parties falls outside the provision. *See, e.g., Choice Sec. Sys., Inc.*, 1998 WL 153254, at *1 (rejecting argument that "subject matter" of agreement was a retroactive renegotiation).

It is not surprising that Courts are hostile toward contract provisions that eliminate prior rights of parties without a clear and express statement in the agreement of doing so. *See Allez Med. Applications, Inc. v. Allez Spine, LLC*, No. G037314, 2007 WL 927905, at *7 (Cal. App. Ct. Mar. 29, 2007) (declining to apply retroactively an arbitration clause because there was no "affirmative evidence" that the change "was intended to operate retroactively"); *see also Bancomer*, 44 Cal. App. 4th at 1461, 52 Cal. Rptr. 2d at 442 (concluding that claims were not within forum selection clause where the "alleged offending conduct preceded formation of the ... agreement"). This is not to say that parties are unable to eliminate prior rights if they so choose; rather, in order to do so, the parties must make that intent express. For example, an express statement in a provision that "prior" transactions are covered under a subsequent agreement is a common method of eliminating prior rights between parties. *See Arista Films, Inc. v. Gilford Securities, Inc.*, 43 Cal. App. 4th 495, 498, 51 Cal. Rptr. 2d 35, 37 (Cal. App. Ct. 1996) (provision requiring arbitration of "all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us,

whether entered into prior, on or subsequent to the date hereof" required arbitration of a claim resulting from conduct before the agreement was signed); *Dean Witter Reynolds Inc. v. Prouse*, 831 F. Supp. 328, 331 (S.D.N.Y. 1993) (provision that required arbitration for disputes "prior, on or subsequent" to the agreement was applied to a dispute that arose under an earlier agreement); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King*, 804 F. Supp. 1512, 1514 (M.D. Fla. 1992) (same).[14]

Alternatively, parties can include specific "Retroactive Effect" clauses. *See, e.g.*, *Coon v. Nicola*, 17 Cal. App. 4th 1225, 1230, 21 Cal. Rptr. 2d 846, 848 (Cal. Ct. App. 1993) (clause providing as follows: "Retroactive Effect: If patient intends this agreement to cover services rendered before the date it is signed ... patient should initial below: Effect as of date of first medical services"). Such language is decidedly not simply a merger clause like the one included in Google's AdWords contract. In fact, the absence of such a plain expression of intent in Google's AdWords agreement is sufficient to exclude Google's (unsupportable) assumption that its boilerplate merger provision has some additional unstated meaning that eliminates TradeComet's rights under the previous AdWords agreements. The inclusion of the additional limiting language "subject matter hereof" leaves no room whatsoever for Google to argue that its boilerplate merger clause has any retroactive application to its conduct under prior AdWords agreements.[15]

_____

[14] *See also San Francisco Cnty. Coll. Dist. v. Keenan & Assoc.*, A115994, 2007 WL 4099543, at *8-9 (Cal. Ct. App. Nov. 14, 2007) (refusing to apply arbitration clause to an existing dispute despite contractual language stating that clause applied to actions "whether occurring prior to, as part of, or after the signing of this Agreement" because the language did not specify existing disputes).

[15] In light of Google's burden under the first prong of *Phillips*, which requires that the venue provision be "reasonably communicated" to parties such as TradeComet, it would be particularly inappropriate to interpret the integration clause in the novel, expansive manner for which Google argues. Indeed, the plain language of these provisions does not provide sufficient notice of any retroactive effect. *See Nagrampa v.*

### C. The Forum Selection Clauses in the Operative Agreements Fail to Encompass TradeComet's Section 1 Claim.

Google also ignores the fact that the Section 1 claim does not involve its AdWords agreement at all. TradeComet alleges that Google entered into a contract, combination or conspiracy with Business.com that had the purpose and effect of unreasonably restraining trade in violation of Section 1 of the Sherman Act. Compl. ¶¶ 116-120. As alleged in the Complaint, "the agreement between Google and Business.com allows Google to sell advertisements for Business.com's search queries. In effect this allows Google to extend its position ... by selling ads for its direct competitor." Compl. ¶ 118. Google attempts to flip this claim on its head by arguing that that the claim is not about Google's illegal agreement with Business.com, but in fact is "fundamentally bas[ed]" on TradeComet's AdWords agreement with Google. Def's Br. at 9. However, Google fails to explain how its separate and illegal agreement with Business.com is somehow encompassed by a forum selection clause in an agreement between TradeComet and Google. *See, e.g.*, *Credit Suisse Securities*, 469 F. Supp. 2d 103, 107-08 (S.D.N.Y. 2007) ("the argument that a forum selection clause in one contract should be applied to a different, separately negotiated contract lacking such a clause requires a much broader reading of 'arising out of' and 'related to' than [the] cases support").

### II. Google Has Not Submitted Evidence Sufficient to Show that Google "Reasonably Communicated" the Terms and Conditions in the 8/29/06 Agreement to TradeComet.

Google has failed to satisfy its burden of presenting evidence sufficient to demonstrate that it "reasonably communicated" the 8/29/06 Agreement to TradeComet. *See Private One of New York v. JMRL Sales & Serv.*, 471 F. Supp. 2d 216, 222 (E.D.N.Y. 2007) (burden on

---

*MailCoups, Inc.*, 469 F.3d 1257, 1291 (9th Cir. 2006) (language of arbitration clause did not provide notice that claims were subject to clause); *Mason v. CreditAnswers, LLC*, Civ. No. 07cv1919-L (POR), 2008 WL 4165155, at *3 (S.D. Cal. Sept. 5, 2008) (refusing to enforce a forum selection clause where context made it "confusing so as not to provide adequate notice").

movant).  The only evidence Google cites is contained in a declaration of Heather Wilburn (a Google AdWords representative) in which she lists eleven TradeComet accounts and claims that for each account TradeComet accepted the terms and conditions of the 8/29/09 Agreement. Howley Decl., Ex. 11.  As support for her statements, Ms. Wilburn attaches screen shots purportedly of each account.  *Id.*  Each screen shot includes a description with the words "Terms and conditions accepted."  *Id.*  There is no other information in Ms. Wilburn's declaration or in the screen shots that provides independent confirmation that an authorized TradeComet user actually accepted the terms and conditions of the 8/29/09 Agreement upon which Google's motion exclusively relies.

TradeComet deposed Ms. Wilburn on April 13, 2009, in an attempt to assess the veracity of the claims in her declaration and supporting materials.  During her deposition, Ms. Wilburn admitted that, despite testifying on the basis of "personal knowledge," she had never heard of TradeComet prior to submitting her declaration in this matter.  Howley Decl., Ex. 10 at 12:16-13:4.  Ms. Wilburn was also unable to address key facts surrounding TradeComet's relationship with Google and, in particular, she had no knowledge of the fact that Google's representatives not only routinely operated TradeComet's accounts but also actually opened new accounts in TradeComet's name.  Howley Decl., Ex. 8.  She acknowledged that "Google representatives" may "create an account" for "some large advertisers" but admitted that she "didn't know how" an advertiser would agree to terms and conditions in such instances.  Howley Decl., Ex. 10 at 16:13-17:8, 19:25-20:9.[16]

---

[16] Wilburn's testimony on this point is consistent with the Declaration of Annie Hsu, which Google submitted in *Feldman v. Google*, 513 F. Supp. 2d 229 (E.D. Pa. 2007).  In her declaration, Ms. Hsu stated that normally AdWords advertisers were required to enter an AdWords contract before placing ads or incurring charges, but that "[s]ome very large advertisers do not use this on-line process, and instead

Ms. Wilburn's inability to address the specific facts of TradeComet's purported acceptance of the terms and conditions of the 8/29/06 Agreement, along with evidence that plainly indicates Google's deep involvement in TradeComet's accounts, casts doubt on Google's claim that an authorized TradeComet user assented to those terms and conditions. This conclusion is further bolstered by the fact that Google's records (provided by Ms. Wilburn) show that TradeComet would have had to assent to (apparently by separately logging on and clicking through) the terms and conditions of each of at least ten AdWords accounts in only three seconds. Howley Decl., Ex. 11. Ms. Wilburn was unable to explain how accomplishing this task would be possible by an external user such as an authorized TradeComet employee. *See* Howley Decl., Ex. 10 at 33:23-25 ("where terms and conditions are updated . . . you do have to log in individually to each . . . account" and individually accept the new terms and conditions); *id.* at 57:10-24 (Wilburn "wouldn't know" how an individual could log into all of these accounts serially and accept terms and conditions within three seconds). The absence by Google of any explicable accounting of TradeComet's purported acceptance of the terms and conditions of the 8/29/06 Agreement cannot be evidence of such acceptance. *See Waters v. Earthlink, Inc.*, 91 Fed. App'x 697, 698 (1st Cir. 2003) (finding "[c]onspicuously absent" evidence showing "that it is reasonable to assume that plaintiff" assented to agreement where defendant's evidence did not address "potentially relevant issues," including "Were ... customers only able to access the internet through these websites? How prominently were the links displayed? How were they labeled or explained?").

---

interact direct with Google representatives." Howley Decl., Ex. 12. TradeComet, prior to its demise as a result of Google's conduct, was one of Google's fastest growing advertisers.

**III.   The Forum Selection Clause in the 8/29/06 Agreement is Unenforceable.**

This Court should not enforce Google's forum selection clause for the additional reason that it is plainly unconscionable.   This is witnessed, for example, by Google's selective enforcement of the provision where Google perceives a litigation or other strategic advantage (rather than for the claimed purpose of "convenience" for a dominant company with ubiquitous reach).   The "place and manner" restrictions in a forum selection clause are unconscionable where they are procedurally and substantively unconscionable.   *See Bolter v. Superior Court*, 87 Cal. App. 4th 900, 906-09, 104 Cal. Rptr. 2d 888, 893-94 (Cal. Ct. App. 2001) (finding clause requiring arbitration in Utah to be unconscionable).   "A contract or clause is procedurally unconscionable if it is a contract of adhesion."  *Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002) (finding clause that required arbitration to take place in Santa Clara County, California to be unconscionable).   In considering substantive unconscionability, courts consider among other things, "the practical effects" of the challenged clause.  *Id.* at 1173; *see also id.* at 1177 ("a forum selection clause may be unconscionable if the 'place or manner' ... is unreasonable taking into account the 'respective circumstances of the parties'").

Here, as the *Person* court concluded, Google's contract is a contract of adhesion.  *See Person*, 456 F. Supp. 2d at 496 ("it is appropriate in this dispute to treat this contract as one of adhesion").   The Operative Agreements here are classic contracts of adhesion because each is a "standardized contract, which imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."  *Comb*, 218 F. Supp. 2d at 1172 (*citing Armendariz v. Foundation Health Psychcare Serv.*, 90 Cal. Rptr. 2d 745 (Cal. 2000)); *see also* Howley Decl., Ex. 10 at 46:16-46:24 (AdWords users "have the option to accept the terms and conditions and continue advertising with us or if ... they don't accept the new terms and conditions, the account will automatically shut off").   It is

uncontested for the purposes of this motion that Google is a monopolist. As a result, there are no available alternatives that could defeat a finding of procedural unconscionability.[17]

Google's forum selection clauses are also substantively unconscionable because "[l]imiting venue to [defendant's] backyard appears to be yet one more means by which the . . . clause serves to shield [defendant] from liability." *Comb*, 218 F. Supp. 2d at 1177. This is particularly so where one of the wealthiest corporations in America, which according to both the Department of Justice and the Federal Trade Commission has monopoly power, seeks to exert its monopoly power through an egregious contract of adhesion to force all its victims, regardless of their financial condition or location, to trek to Santa Clara County, Google's "backyard," in order to seek redress under the federal antitrust statutes.[18] In *Wilmot v. McNabb*, 269 F. Supp. 2d 1203, 1212-13 (N.D. Cal. 2003), the court concluded that a venue provision in an arbitration agreement that required plaintiffs to resolve their dispute in a geographically distant state was unconscionable. The *Wilmot* court stated that the defendant "does business through the United States but requires individual customers from across the country to travel to one locale to arbitrate their disputes. Accordingly, the Court concludes that the venue provision is substantively unconscionable." *Id.* at 1211; *see also Comb*, 218 F. Supp. 2d at 1172 (applying the same reasoning to invalidate a forum selection clause that was part of an arbitration provision in a PayPal online clickwrap agreement); *Bolter*, 87 Cal. App. 4th at 910, 104 Cal. Rptr. 2d at 895 (invalidating a forum selection clause that is part of franchise arbitration agreement). Here,

---

[17] Defendants cite *Feldman v. Google*, 513 F. Supp. 2d 229 (E.D. Pa. 2007), in arguing that the forum selection clause in its AdWords agreement is not "unfair" or "unreasonable," but Google neglects to note that the present case – unlike *Feldman* – is on a motion to dismiss and TradeComet specifically alleges that there are no reasonable alternatives available to Google.

[18] In such situations courts should "remain attuned to well-supported claims that the agreement ... resulted from the sort of ... overwhelming economic power that would provide grounds for the revocation of any contract." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985).

the same reasoning applies. Google's forum selection clause is substantively unconscionable because it requires advertisers and others, including TradeComet (which Google financially decimated), from around the country to go to California to litigate against the monopolist in its backyard.[19]

Finally, Google argues that its forum selection provision "appropriately asserts venue where Google's headquarters is located."[20] Def. Br. at 12; *see also* Howley Decl., Ex. 10 at 76:8-21. In fact, Google routinely litigates around the country at its pleasure – in many instances without even attempting to enforce its forum selection provision. *See, e.g., Rescuecom v. Google*, No. 06-4881-cv, 2009 WL 875447 (2d Cir. Apr. 3, 2009); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622 (D. Del. 2007). This selective enforcement reveals the true purpose of the provision is not for "convenience," as Google argues in its brief, but rather for perceived strategic or litigation advantage due to Google's monopoly power.

## IV.  Dismissal Pursuant to Either Rule 12(b)(1) or Rule 12(b)(3) is Procedurally Improper Here and Transfer Under § 1404 is Unwarranted.

Venue is proper in this Court under 15 U.S.C. § 22, the broad statutory venue provision applicable to federal antitrust actions. Compl. ¶ 14 (venue is also proper under 15 U.S.C. §§ 15,

---

[19] It should also be noted that Google's forum selection clause is unenforceable to the extent it requires suit in a particular county in California. California law prohibits private parties from selecting the "county or other territory" in which the case will be heard. *See Alexander v. Superior Court*, 1114 Cal. App. 4th 723, 732, 8 Cal. Rptr. 3d 111, 117 (Cal. Ct. App. 2003) (refusing to enforce a clause selecting Santa Clara County as the venue for contractual disputes between two California parties). It would be a bizarre result indeed if this Court were to require TradeComet, a New York party asserting federal antitrust claims, to litigate in Santa Clara County, California, while a Los Angeles party to an identical agreement with Google would not be forced to litigate in Google's backyard.

[20] It bears noting that notwithstanding Google may think it appropriate only to litigate where it is headquartered, Congress in enacting the antitrust venue statute decided it appropriate to require monopolists such as Google to answer for their antitrust violations in any and all districts in which they do business.

26 and 28 U.S.C. § 1391).[21]  Similarly, this Court has subject matter jurisdiction over TradeComet's federal antitrust claims under 28 U.S.C. §§ 1331, 1337, and 15 U.S.C. §§ 4, 15, and 26.  Compl. ¶ 13.  Google does not dispute the fact that all of these statutes apply here.  Instead, in moving to dismiss under Rules 12(b)(1) and 12(b)(3), Google contends that a forum selection clause found in one version (of many) of its AdWords agreements makes venue improper and deprives the court of subject matter jurisdiction.  The Supreme Court, however, has held that 28 U.S.C. § 1404 "controls" requests to "give effect to the parties contractual choice of venue" where a forum clause selects another federal district.[22]  *See Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 27-32 (1988) ("federal law, specifically 28 U.S.C. § 1404(a), governs the parties venue dispute" because "a district court ... must apply a federal statute that controls the issue before the court and that represents a valid exercise of Congress' constitutional powers"); *see also* 14D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 3803.1 (where a forum selection clause selects another federal district "the *Stewart* decision instructs courts to use the Section 1404(a) balancing test, even if, as in *Stewart*, the movants ask for the suit to be dismissed for improper venue pursuant to the forum clause"); 17 JAMES WM. MOORE, ET AL., MOORE'S FED. PRAC. § 111.04[4][c] (3d ed. 2009) (same).[23]

---

[21] The legislative history makes plan the fact that 15 U.S.C. § 22 was intended to broaden the venue options available to antitrust plaintiffs.  *See United States v. Nat. City Lines, Inc.*, 334 U.S. 573, 582-86 (1948) (discussing legislative history), *superseded in part by statute*, 28 U.S.C. § 1404.

[22] 28 U.S.C. § 1404(a) provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

[23] The *Stewart* case involved a mandatory forum selection clause selecting courts in Manhattan.  487 U.S. at 24 & n.1.  This Court's opinion in *Cfirstclass Corp.*, 560 F. Supp. 2d 324, involved a situation where § 1404 was inapplicable because the forum selection clause in that case selected England.  In other words, where as in *Stewart* the district court could transfer venue to another federal court; such a transfer was not possible in Cfirstclass Corp.

"The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in § 1404(a)." *Stewart*, 487 U.S. at 31. In *D.H. Blair & Co., Inc. v. Gottdiener*, the Second Circuit observed that:

> Some of the factors a district court is to consider are, inter alia: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

462 F.3d 95, 106-07 (2d Cir. 2006) (internal citations omitted). As the Supreme Court noted, "[i]t is conceivable in a particular case ... that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause." *Stewart*, 487 U.S. at 30-31. Indeed, a number of courts have refused to transfer to another venue despite the presence of a forum selection clause that encompassed the claims.[24] Here, the § 1404 convenience factors plainly cut in TradeComet's favor and transfer is unwarranted.[25]

In an apparent recognition that § 1404 convenience factors weigh on its motion, Google makes a half-hearted effort to claim that California is "more convenient" because, according to

---

[24] *See, e.g., Marel Corp. v. Encad Inc.*, 178 F. Supp. 2d 56 (D.P.R. 2001) (motion to transfer venue denied despite applicable forum selection clause); *Fibra-Steel, Inc. v. Astoria Industries, Inc.*, 708 F. Supp. 255 (E.D. Mo. 1989) (same).

[25] The locus of the majority of operative facts is in New York, where TradeComet is based, Google has a large office, and the meeting occurred at which Google reviewed TradeComet's business plans. Compl. ¶¶ 11, 41, 45, 46, 85. New York is TradeComet's forum choice, is convenient to all of TradeComet's anticipated witnesses, and is convenient to both parties' counsel. The relevant documents from TradeComet are in New York. Presumably, many of Google's documents relating to this case are either in or readily accessible in New York. Other relevant documents are likely in Washington, D.C., due to the Department of Justice's recent investigation into Google's monopoly power. Finally, there is no question that Google has much greater means than TradeComet. Google is a monopolist that has previously litigated in New York against AdWords advertisers; TradeComet is a start-up business whose financial well-being was destroyed by Google's anticompetitive conduct.

Google, *if* it had to litigate a "myriad" of suits outside of California that would not be convenient.[26]  This speculative conclusion is defied by the fact that Google actually – and routinely – chooses *not* to enforce it forum provision in many jurisdictions.  Google's selective enforcement of its clauses amounts to defensive forum shopping and should not be countenanced, much less distorted into a factor favoring transfer.[27]  In any event, inconvenience to Google – which has profited handsomely from its illegal deeds – is at best a secondary concern, particularly where the relevant venue statute reflects a considered Congressional decision to require antitrust defendants to answer in any federal district in which they do business.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied and this case should not be transferred.

Dated:   April 15, 2009

<div style="margin-left:40%;">

Respectfully Submitted,

    s/ Joseph J. Bial
Charles F. Rule
Jonathan Kanter
Joseph J. Bial
Daniel J. Howley
CADWALADER, WICKERSHAM & TAFT LLP
1201 F St. NW
Washington, DC 2004
Tel:     (202) 862-2200
Fax:     (202) 862-2400

</div>

---

[26] Hypothetical suits by other parties is not a factor Courts consider under § 1404.  *See, e.g., D.H. Blair & Co.*, 462 F.3d at 106-107 (naming factors related to the present case, the present parties, and public policy); *Am. Eagle Oufitters, Inc. v. Tala Bros. Corp* ., 457 F. Supp. 2d 474 (S.D.N.Y. 2006) (same).

[27] Of course, improper forum shopping is not limited to plaintiffs.  *See, e.g., E & J Gallo Winery*, 388 F. Supp. 2d at 1161-62 (defendant engaged in "forum shopping" by invoking forum selection clause late).