UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TRADECOMET.COM LLC,                            :
                                               :          09 Civ. 1400 (SHS)
                                               :
                          Plaintiff,           :
                                               :          OPINION & ORDER
            -against-                          :
                                               :
GOOGLE, INC.,                                  :
                                               :
                          Defendant.           :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

The parties to this action—TradeComet.com LLC and Google, Inc.—own and operate competing internet search engines. TradeComet purchased advertising on Google's website through Google's AdWords program and now alleges that Google attempted to reduce traffic at TradeComet's own website both by increasing the cost of TradeComet's advertising and by entering into exclusive agreements with other websites, all allegedly in violation of the Sherman Antitrust Act. Google has now moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(3) for improper venue based on a forum selection clause in the parties' advertising contracts. Because TradeComet's claims fall within the scope of the relevant forum selection clause that requires that this action be brought in California, and because enforcing that clause would be neither unreasonable nor unjust, Google's motion to dismiss is granted.

I.   **Background**

The following facts are taken from the complaint; the declarations of Heather Wilburn, Daniel J. Howley, and Sara Ciarelli Walsh; and the attachments thereto, and are presumed to be true for purposes of this motion.

A.     The Advertising Relationship between TradeComet and Google

TradeComet operates the website SourceTool.com, which attracts "highly-valued search traffic of businesses seeking to buy or sell products and service to other businesses," and provides what is commonly referred to as a "B2B" (for "business to business") directory. (Compl. ¶ 4.)  TradeComet alleges that since its start in 2005, its website has experienced significant growth, in part based on the search traffic and advertising revenue that it generated as a result of placing advertisements for its website on Google's competing website. (*Id*. ¶¶ 6, 41-44.)

Dan Savage, the founder of TradeComet, met with Google representatives in December 2005 and May 2006 to discuss use of Google's AdWords advertising program to maximize TradeComet's revenue.[1]  TradeComet alleges that following the May 2006 meeting, Google "drastically" increased the minimum price of the keywords that SourceTool.com had purchased through the AdWords program, thus making those keywords effectively unavailable to TradeComet and depriving its website—SourceTool.com—of traffic that the use of those keywords would drive to the SourceTool.com website.  This in turn caused a drop in the revenue that TradeComet derived from advertisements on its website. (*Id*. ¶¶ 45-48.)  Google claims that it increased the price of the relevant keywords due to its use of an algorithm that adjusts advertising prices to reflect the quality of the page to which the advertisement linked. (*Id*. ¶¶ 49-52.)  TradeComet contends that Google dominates the market for online search, and that

---

[1] The U.S. Court of Appeals for the Second Circuit has described Google's AdWords program as follows:

> AdWords is Google's program through which advertisers purchase terms (or keywords).  When entered as a search term, the keyword triggers the appearance of the advertiser's ad and link.  An advertiser's purchase of a particular term causes the advertiser's ad and link to be displayed on the user's screen whenever a searcher launches a Google search based on the purchased search term. Advertisers pay Google based on the number of times Internet users 'click' on the advertisement, so as to link to the advertiser's website.

*Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 125 (2d Cir. 2009); *see also* Compl. ¶¶ 31-34.

2

Google's effective exclusion of SourceTool.com from its AdWords program starved SourceTool.com of the traffic it needed to grow, in violation of the Sherman Antitrust Act. (*Id.* ¶¶ 3, 21-22, 54-55.)

TradeComet also alleges that Google has entered into exclusive agreements with other popular websites and with rival search engines in a further effort to consolidate online search at Google.com and exclude other search engines—such as SourceTool.com—from the relevant market, also allegedly violating the Sherman Antitrust Act. (*Id.* ¶¶ 68-74, 100-01.)

B.   The Relevant Forum Selection Clauses

Users of Google's AdWords program must accept a set of terms and conditions in order to activate an AdWords account and they must subsequently accept any additional terms and conditions that Google later implements if the user wants to continue using its existing AdWords account. (Dep. of Heather Wilburn dated April 13, 2009 ("Wilburn Dep.") at 13:9-11, 34:21-35:6, Ex. B to Dec. of Sara Ciarelli Walsh dated April 22, 2009 ("Walsh Dec.").) The terms and conditions that went into effect on April 19, 2005 and May 23, 2006 include provisions stating that "[t]he Agreement must be construed as if both parties jointly wrote it, governed by California law except for its conflicts of laws principles and adjudicated in Santa Clara County, California." (Google Inc. AdWords Program Terms dated April 19, 2005 (the "April 2005 Agreement") ¶ 7, Ex. 2 to Dec. of Daniel J. Howley dated April 15, 2009 ("Howley Dec."); Google Inc. AdWords Program Terms dated May 23, 2006 (the "May 2006 Agreement") ¶ 9, Ex. 3 to Howley Dec.) They also include identical language directing that "Google may modify the [AdWords] Program or these Terms at any time without liability and your use of the Program after notice that Terms have changed indicates acceptance of the Terms." (April 2005 Agreement ¶ 2; May 2006 Agreement ¶ 2.)

3

Effective August 22, 2006, Google issued a revised set of terms and conditions that contains the same language regarding modifications to the terms along with a broader forum selection clause as follows:

> THE AGREEMENT MUST BE CONSTRUED AS IF BOTH PARTIES JOINTLY WROTE IT AND GOVERNED BY CALIFORNIA LAW EXCEPT FOR ITS CONFLICTS OF LAWS PRINCIPLES. ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE GOOGLE PROGRAM(S) SHALL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA, AND GOOGLE AND CUSTOMER CONSENT TO PERSONAL JURISDICTION IN THOSE COURTS.

(Google Inc. Advertising Program Terms dated August 22, 2006 (the "August 2006 Agreement") ¶ 9, Ex. 1 to Howley Dec. (capitalization in original).) Representatives for TradeComet have accepted those terms and conditions. (*See* Dec. of Heather Wilburn dated March 30, 2009 ("Wilburn Dec.") ¶¶ 6-7; Ex. D-F to Walsh Dec.)

As noted, Google has now moved to dismiss the complaint on the grounds that the August 2006 forum selection clause requires TradeComet to bring its claims in a court located in Santa Clara County, California, not in the U.S. District Court for the Southern District of New York. TradeComet, on the other hand, contends that the forum selection clause contained in the April 2005 and May 2006 Agreements—not the August 2006 Agreement—governs because it was in effect at the time of Google's alleged violations of the Sherman Antitrust Act. Because Google is correct that the August 2006 forum selection clause governs and because TradeComet's claims "relat[e] to . . . the Google Program(s)," Google's motion to dismiss the complaint is granted.[2]

---

[2] TradeComet has moved to strike Exhibits D through H of the Walsh Declaration submitted in reply by Google because those exhibits allegedly present new material that Google should have submitted with its opening brief. These exhibits contain screenshots—images that record the visible content displayed on a computer's monitor—on which Google relies to show that TradeComet accepted the August 2006 Agreement for its Google AdWords Accounts. Because these exhibits simply respond to TradeComet's suggestion in its papers in opposition to the motion that it never accepted the August 2006 Agreement, the Court will consider these materials. *See Niv v. Hilton*

4

## II.     Standard of Review

There is a split of authority in the Second Circuit regarding the appropriate procedural mechanism by which to enforce a forum selection clause. The proper vehicle is a motion to dismiss the complaint for either (1) lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), *see AVC Nederland B.V. v. Atrium Inv. Partnership*, 740 F.2d 148, 152 (2d Cir. 1984); (2) improper venue pursuant to Rule 12(b)(3), *see Phillips v. Audio Active Ltd.*, 494 F.3d 378, 382 (2d Cir. 2007); or (3) failure to state a claim pursuant to Rule 12(b)(6), *see Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 508 n.6 (2d Cir. 1998). *But see New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) ("[T]here is no existing mechanism with which forum selection enforcement is a perfect fit."). Hedging its bet, Google brings its motion pursuant to both Rule 12(b)(1) and 12(b)(3).[3] *See Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 327 (S.D.N.Y. 2008).

The burden on a plaintiff opposing enforcement of a forum selection clause is similar to that "imposed on a plaintiff to prove that the federal court has subject matter jurisdiction over his suit or personal jurisdiction over the defendant." *New Moon Shipping*, 121 F.3d at 29. Thus, courts apply the standard of review applicable to motions to dismiss for lack of jurisdiction, taking the facts in the light most favorable to the party resisting enforcement of the forum selection clause. *See id.*

---

*Hotels Corp.*, --- F. Supp. 2d ---, 2008 WL 4849334, at *8 n.4 (S.D.N.Y. Nov. 10, 2008); *see also Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005).

[3] In deciding a motion to dismiss pursuant to either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3), a court may consider evidentiary matters outside the pleadings, "by affidavit or otherwise," regarding the existence of jurisdiction. *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *see also State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007); *Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009). Accordingly, the Court will consider the several declarations submitted by the parties, along with their attachments—including the three agreements between TradeComet and Google—because they are germane to the question of the Court's subject matter jurisdiction.

**III.    Analysis**

The parties contest both which forum selection clause applies to this action and whether either forum selection clause requires dismissal or transfer.

A.    <u>Which Forum Selection Clause Applies</u>

The parties contest which forum selection clause—i.e., that found in the April 2005 and May 2006 Agreements or the clause found in the August 2006 Agreement—governs this motion. TradeComet contends that, because the conduct alleged in the complaint began in mid-2006, when the narrower forum selection clause found in the April 2005 and May 2006 Agreements was in effect, that clause governs. Google responds by pointing to the language in those earlier agreements that "Google may modify the [AdWords] Program or these Terms at any time without liability and your use of the Program after notice that Terms have changed indicates acceptance of the Terms" to argue that the forum selection clause in the August 2006 Agreement replaced and superseded those found in the earlier agreements. (April 2005 Agreement ¶ 2; May 2006 Agreement ¶ 2.) Google also notes that the August 2006 Agreement specifically states that it "supersedes and replaces any other agreement, terms and conditions applicable to the subject matter hereof." (August 2006 Agreement ¶ 9.) The Court applies California state law to resolve this question, as all agreements between the parties include choice of law provisions requiring the application of California law.

Under California state law, the fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting. Cal. Civ. Code § 1636; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 474 (Cal. Ct. App. 1998). When a contract is reduced to writing, this intent "is to be ascertained

6

from the writing alone, if possible." Cal. Civ. Code § 1639; *see also Brinton v. Bankers Pension Servs., Inc.*, 76 Cal. App. 4th 550, 559 (Cal. Ct. App. 1999).

Furthermore, "the fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice." *Asmus v. Pacific Bell*, 23 Cal. 4th 1, 16 (2000); *see also MySpace, Inc. v. Globe.com, Inc.*, No. 06 Civ. 3391, 2007 WL 1686966, at *10 (C.D. Cal. Feb. 27, 2007).

The plain language of the agreements indicates that TradeComet accepted the modifications to the forum selection clause found in the August 2006 Agreement when it accepted that agreement. *See Stute v. Burinda*, 123 Cal. App. 3d Supp. 11, 16 (Cal. App. Dep't Super. Ct. 1981). Accordingly, the Court assesses whether the forum selection clause found in the August 2006 Agreement requires the dismissal of the complaint or transfer of this action.

B.  <u>Dismissal Based on a Forum Selection Clause</u>

"The scope of the forum selection clause is a contractual question that requires the courts to interpret the clause and, where ambiguous, to consider the intent of the parties." *New Moon Shipping*, 121 F.3d at 33. "Plaintiff's choice of forum in bringing his suit in federal court in New York will not be disregarded unless the contract evinces agreement by the parties that his claims cannot be heard there." *Phillips*, 494 F.3d at 387. Thus, the court must "examine the substance of [a plaintiff's] claims as they relate to the precise language" of the specific clause at issue. *Id*. at 389.

To obtain dismissal based on a forum selection clause, the party seeking enforcement of the clause must demonstrate that: (1) the clause was reasonably communicated to the party resisting enforcement, (2) the clause was mandatory and not merely permissive, and (3) the

claims and parties involved in the suit are subject to the forum selection clause. *Id.* at 383-84. After the party seeking enforcement has established these three conditions, the burden shifts to the party resisting enforcement to rebut the presumption of enforceability by "making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

The U.S. Court of Appeals for the Second Circuit has discussed—but not decided—what law to apply to a forum selection clause when the contract also contains a choice of law provision. *See Phillips*, 494 F.3d at 384. In the *Phillips* decision, the court was clear that the first and fourth steps of the analysis—whether the clause was communicated to the non-moving party and whether enforcement would be reasonable—are procedural in nature and should be analyzed under federal law. *See id.*; *see also Diesel Props S.r.L. v. Greystone Business Credit II LLC*, No. 07 Civ. 9580, 2008 WL 4833001, at *7 (S.D.N.Y. Nov. 5, 2008). However, it was troubled by the application of federal law to the second and third prongs of the inquiry, which concern the meaning and scope of the forum selection clause, noting that it could not "understand why the interpretation of a forum selection clause should be singled out for application of any law other than that chosen to govern the interpretation of the contract as a whole." *Phillips*, 494 F.3d at 385-86 (citing *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418 (10th Cir. 2006)). Because the parties here rely on both federal and California state law in their submissions, and because application of either body of law to the second and third *Phillips* prongs results in the same outcome, the Court need not decide that issue at this time.

1.      *The forum selection clause was reasonably communicated to plaintiff.*

The Second Circuit "regularly enforce[s]" forum selection clauses as long as "the existence of the clause was reasonably communicated to the parties." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). The agreements at issue here are "clickwrap arrangements" in which users of Google's AdWords program are required to agree to the proffered terms in order to use the program.[4] *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 429 (2d Cir. 2004); *see also* Wilburn Dep. at 13:9-11, 34:21-35:6.

District courts in this Circuit have found that clickwrap agreements that require a user to accept the agreement before proceeding are "reasonably communicated" to the user for purposes of this analysis. *See, e.g.*, *Person v. Google Inc.*, 456 F. Supp. 2d 488, 496-97 (S.D.N.Y. 2006) (finding that Google's AdWords agreement provided the plaintiff with sufficient notice of the terms of the user agreement to enforce its forum selection clause); *Universal Grading Service v. eBay, Inc.*, No. 08 Civ. 3557, 2009 WL 2029796, at *11 (E.D.N.Y. June 10, 2009); *Novak v. Tucows, Inc.*, No. 06 Civ. 1909, 2007 WL 922306, at *7-9 (E.D.N.Y. Mar. 26, 2007).

Google bears the burden of demonstrating that it reasonably communicated the forum selection provision to TradeComet, *Phillips*, 494 F.3d at 383-84, and the Court must consider the facts in the light most favorable to TradeComet as the party resisting enforcement of the forum selection clause, *New Moon Shipping*, 121 F.3d at 29. Google offers testimony and screenshots

---

[4] A "clickwrap" license is one that

> presents the potential licensee (i.e., the end-user) with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the license agreement by clicking on an icon. Essentially, under a clickwrap arrangement, potential licensees are presented with the proposed license terms and forced to expressly and unambiguously manifest either assent or rejection prior to being given access to the product.

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 429 (2d Cir. 2004) (quotation and citation omitted); *see also Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007) (describing the clickwrap agreement containing the terms and conditions of Google's AdWords program).

showing the status of TradeComet's AdWords accounts to support its contention that TradeComet accepted the August 2006 Agreement and that it had to click through the text of that agreement to do so. (*See, e.g.*, Wilburn Dep. at 13:9-11, 34:21-35:6; Wilburn Dec. ¶¶ 6-7; Ex. D-F to Walsh Dec.) TradeComet neither denies that its representatives agreed to the user agreement that contained the forum selection clause nor offers any evidence to the contrary. Thus, TradeComet has not overcome Google's prima facie showing that representatives of TradeComet accepted the forum selection clause at issue in this action.

    2.    *The forum selection clause is mandatory.*

The relevant forum selection clause requires that claims "shall be litigated exclusively in the federal or state courts of Santa Clara County, California." (August 2006 Agreement ¶ 9.) "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips*, 494 F.3d at 386; *see also Olinick v. BMG Entertainment*, 138 Cal. App. 4th 1286, 1294 (2006) ("The clause in question contains express language of exclusivity of jurisdiction, specifying a mandatory location for litigation. This constitutes a mandatory forum selection clause." (citation omitted)).

Here, the forum selection clause clearly contains compulsory language specifying venue, which is sufficient to make the clause mandatory for purposes of this analysis.

    3.    *Plaintiff's claims are subject to the forum selection clause.*

TradeComet contends that its antitrust claims do not fall within the scope of the forum selection clause, whereas Google argues that the claims stem from Google's pricing and administration of its AdWords program, and thus fall within the scope of the Agreement. The August 2006 Agreement provides that "[a]ll claims arising out of or relating to this agreement or the Google Program(s)" shall be litigated in Santa Clara County, California. (August 2006

10

Agreement ¶ 9.) The Court need not determine whether TradeComet's antitrust claims arise out of or relate to the agreement because they clearly arise out of and relate to Google's AdWords program.

The Second Circuit has held consistently that forum selection clauses are to be interpreted broadly and are not restricted to pure breaches of the contracts containing the clauses. *See, e.g.*, *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (finding that a forum selection clause applicable to controversies arising "in connection with" a set of contracts detailing the rights and duties of investors and marketers encompassed investors' securities and RICO claims); *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720-21 (2d Cir. 1982) (finding that a forum selection clause applicable to controversies "arising directly or indirectly" from a franchise agreement encompassed the franchisee's antitrust suit against franchisor); *see also Smith, Valentino & Smith, Inc. v. Superior Court of Los Angeles County*, 17 Cal. 3d 491, 495 (1976). Nonetheless, this expansive interpretation is not without limits, as the Second Circuit articulated in *Phillips*.

In *Phillips*, the court found that a plaintiff's claim for breach of copyright did not "arise out of" his licensing agreement with the defendant because the rights he sought to enforce did not originate from the recording contract. *Phillips*, 494 F.3d at 390. In reaching this conclusion, the Second Circuit focused on the specific language of the forum selection clause, which directed that "any legal proceedings that may arise out of [this agreement] are to be brought in England." *Id*. at 382. The court found the meaning of "arise out of" to be narrower than "all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract," particularly in light of the fact that the parties to the agreement could have used such broader terms if they so chose. *Id*. at 389.

11

Applying this logic, the court found that, because the plaintiff's rights at issue did not originate from the recording contract, his effort to enforce those rights did not "arise out of" the contract. *Id*.

Both the language of the forum selection clause found in the August 2006 Agreement and the factual allegations of the complaint distinguish this action from *Phillips*. As noted above, the agreement here requires that "[a]ll claims arising out of or relating to this agreement or the Google Program(s)" shall be litigated in Santa Clara County, California. (August 2006 Agreement ¶ 9.) Thus, the clause at issue here specifically employs one of the broader terms that the *Phillips* court noted—i.e., "all claims . . . that . . . 'relate to'"—in contrast to the narrower "aris[ing] out of" provision at issue in that case. *See Phillips*, 494 F.3d at 389. Of even greater significance, this forum selection clause does not limit its reach merely to claims that relate to the agreement, but rather encompasses claims that relate to "the Google Program(s)," which it defines as "Google's advertising Program(s)." (August 2006 Agreement ¶ 9, preamble.) Thus, if TradeComet's antitrust claims "arise out of" or "relate to" either the August 2006 Agreement or Google's advertising programs, they are subject to the forum selection clause.

TradeComet sets forth three counts in its complaint. By their plain language, each claim "relat[es] to" Google's advertising programs. *See generally Universal Grading Serv. v. eBay, Inc.*, No. 08 Civ. 3557, 2009 WL 2029796, at *11 (E.D.N.Y. June 10, 2009) (Plaintiffs' antitrust claims alleging conspiracy to restrain trade arise out of eBay's services and thus fall within the forum selection clause.); *Freedman v. Am. Online, Inc.*, 294 F. Supp. 2d 238, 241-42 (D. Conn. 2003); *see also Brodsky v. Match.com LLC*, No. 09 Civ. 5328, 2009 WL 3490277 (S.D.N.Y. 2009) (finding that the plaintiffs' claims regarding website users' inability to communicate via

12

email on the Match website are subject to a forum selection clause governing "any dispute arising out of the Website and/or the Service").

First, TradeComet alleges that Google has violated Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, by excluding TradeComet from the market for online search in order to protect Google's own monopoly. (Compl. ¶¶ 105-08.) While Count One does not identify the specific behavior that Google engaged in to maintain its purported monopoly and exclude SourceTool.com from the online search market, this count incorporates previous allegations, including those regarding Google's manipulation of the AdWords pricing formula to prevent SourceTool.com from advertising on Google's website. Thus, the facts alleged in support of Count One "relat[e] to" Google's advertising programs.

Second, TradeComet contends that Google has attempted to monopolize the online search market by increasing barriers to entry through the use of preferential agreements and manipulation of its advertising program to starve competitors such as SourceTool.com of search traffic, also in violation of Section 2 of the Sherman Antitrust Act. (*Id*. ¶¶ 110-14.) Count Two specifically alleges that Google has attempted to monopolize the online search market by, *inter alia*, using the pricing metrics within the AdWords program to prevent SourceTool.com from obtaining search traffic. Again, this allegation "relat[es] to" Google's administration of its advertising programs.

Finally, TradeComet alleges that Google has entered into unreasonable agreements that restrain trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, by partnering with Business.com. (*Id*. ¶¶ 116-20.) Count Three alleges that Google's agreement with Business.com improperly relaxes requirements that it imposes on SourceTool.com and other competitors, thereby both providing search traffic to Business.com that it denies to

13

SourceTool.com and effectively selling advertisements for Business.com's own search queries. While TradeComet again does not specify the requirements for which Google gives Business.com preferential treatment, the only interaction that it has alleged between TradeComet and Google—and thus the only requirements imposed on TradeComet that Google could relax for Business.com—stems from the AdWords program, and so this count, too, "relat[es] to" Google's advertising program.

Application of California state law does not dictate a different outcome. State "courts have placed a substantial burden on a plaintiff seeking to defeat [a forum selection] clause, requiring it to demonstrate enforcement of the clause would be unreasonable under the circumstances of the case. That is, that the forum selected would be unavailable or unable to accomplish substantial justice." *CQL Original Prods., Inc. v. Nat'l Hockey League Players' Assn.*, 39 Cal. App. 4th 1347, 1354 (Cal. Ct. App. 1995) (citations omitted). Courts in California—as do those in the Second Circuit—turn first to the objective intent of a written agreement, as evidenced by its plain language. *See Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.*, 164 Cal. App. 3d 1122, 1127 (Cal. Ct. App. 1985).

Furthermore, in considering whether a plaintiff's claims are subject to a choice of law provision, the California Supreme Court has determined that a clause that "provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 470 (1992). In reaching this conclusion, the court was skeptical that "any rational businessperson . . . would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship." *Id*. at 469. It wrote that if such a result were desired, the parties should "negotiate and obtain the assent of their fellow

parties to explicit contract language specifying what jurisdiction's law applies to what issues." *Id.* at 470. This logic parallels that of the Second Circuit in *Phillips* and applies here, as the parties agreed to litigate all claims relating to their agreement or to Google's advertising program in Santa Clara County. On its face, such an encompassing forum selection clause demonstrates the parties' objective intent to litigate claims such as those brought by TradeComet in California, rather than in New York.

    4.    *Enforcement of the forum selection clause is neither unreasonable nor unjust*.

TradeComet contends that the forum selection clause is unconscionable because—it claims—Google enforces it selectively, it is found within a contract of adhesion, and it would force TradeComet to litigate its claims in Google's "backyard."

As an initial matter, TradeComet bears the burden of showing that the forum selection clause is unreasonable or unjust. *See Phillips*, 494 F.3d at 383-84. However, TradeComet offers neither evidence to support its allegation of selective prosecution[5] nor legal authority indicating that such behavior—if true—would make a forum selection clause unconscionable and thus unenforceable. Additionally, the fact that the August 2006 Agreement may or may not be a contract of adhesion does not invalidate its forum selection provision. *See Brodsky*, 2009 WL 3490277, at *7-8 ("[A] forum selection clause is not unenforceable even if it appears in a contract of adhesion, including so-called 'click wrap' contracts . . . ." (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991))).

Finally, although litigating these claims in California rather than New York likely will be more burdensome for TradeComet, which has its principal place of business in New York, there is no suggestion that it would be so difficult as to deprive TradeComet of a fair opportunity to

---

[5] TradeComet cites to cases that Google has litigated outside of Santa Clara County, California but does not demonstrate that those actions fell within the scope of a forum selection clause similar to the one at issue here.

litigate its claims. *See M/S Bremen*, 407 U.S. at 18 ("[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."); *see also Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d at 452 (rejecting the contention that a Google forum selection clause encompassing "any claims or causes of action arising out of or relating to your use of this service" was unconscionable); *Brodsky*, 2009 WL 3490277, at *4.

## IV.   Conclusion

Google has demonstrated that the August 2006 Agreement provides the forum selection clause at issue in this action, that the clause was reasonably communicated to TradeComet, that the clause is mandatory, and that TradeComet's antitrust claims are subject to it. TradeComet has not shown that enforcement of the clause would be unconscionable. Accordingly, Google's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(3) is granted. The Court also denies TradeComet's motion to strike Exhibits D through H of the Walsh Declaration.

Dated: New York, New York
       March 5, 2010

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.